[No. 13060.  Department One.  March 15, 1916.]

CARL WASMUND, *in his Individual Capacity, and as Adminis-trator, Claimant, Appellant,* v. MAX WASMUND, *Adverse Claimant, Respondent.*[1]

BASTARDS—INHERITANCE—RIGHT.  Under the common law an il-legitimate child could not take as an heir, and the right to do so must rest upon statute, such statute being remedial only in the sense of giving the beneficiary a status in law.

SAME—INHERITANCE—COMMUNITY PROPERTY—STATUTES.  Upon the death of the wife, her illegitimate child does not inherit one-half of the community property by virtue of the act of 1875, § 4 (Rem. & Bal. Code, § 1345) providing that every illegitimate child "shall in all cases be considered an heir to the mother" and shall inherit the estate in the same manner as if he had been born in lawful wedlock; in view of § 2 of the same act, which provides that on the death of one spouse, the community property should vest in the survivor, and the later enactment, Laws 1879 (Rem. & Bal. Code, § 1342) which provides for the descent of one-half of the community property in equal shares to the "legitimate issue" of the body of the deceased, and if there be no issue living then the same "shall all pass to the survivor;" since the history of the act shows the intent to exclude illegitimate issue from sharing in the community property, except by testamentary disposition or acknowledgment or adoption of the child, which was within the power of the parent to provide.

Cross-appeals from a judgment of the superior court for Pierce county, Clifford, J., entered August 5, 1915, upon findings in favor of the petitioner, adjudging a right of in-heritance in the community estate of a deceased person. Reversed.

*Stallcup & Stallcup* (*Robert B. Nason,* of counsel), for ap-pellants.

*Frank H. Kelley* and *Ralph Woods,* for respondent and cross-appellant.

CHADWICK, J.—Theresa, the wife of Carl Wasmund, died intestate leaving a community estate.  The court found,

[1]Reported in 156 Pac. 3.

and we shall accept its finding, that Max Wasmund was born out of wedlock, prior to the time of the marriage of his mother to Carl Wasmund; and further, that Max was the sole heir of Theresa and entitled to the whole of one-half of the community property, subject to some qualifications not material to this discussion. The controlling question presented upon this appeal is whether an illegitimate child can inherit the community property of a deceased parent to the exclusion of the surviving spouse.

That the state may define the character of property and the tenure by which it is holden, will not be denied. It may also fix rules of descent. The rule of the common law was that an illegitimate child could not take as the heir, either of the putative father or of the mother, "for he can inherit nothing, being looked upon as the son of nobody." "The incapacity of a bastard consists principally in this, that he cannot be the heir to any one, etc." I Black. Com. 459.

So it is held in modern times that no man has an inheritable interest in an estate to which he is a stranger in blood, unless he inherit in virtue of some statute, or as Sir William Blackstone put it, following the text just quoted, "by the transcendent power of an act of parliament, and not otherwise, as was done in the case of John of Gaunt's bastard children by a statute of Richard the Second." The harshness of the common law rule, which was to some extent, if not entirely, "vicarious" in that it punished the child for the sin of the parent, has not met with general approval by legislative bodies in this country, and it is now the common thing to find statutes defining the status and fixing the interest of illegitimate children in the property of the admitted or acknowledged parent. We are not referred to any case where the courts have, in the absence of statute, questioned the rule of the common law or undertaken, by rule or construction, to enlarge the terms of such statutes if plain and certain in terms. Nor could they do so without violating one of the

first principles of statutory construction, that is, that a right that is created, as distinguished from a natural or existing right which is defined by statute, shall not be extended beyond its terms or beyond its necessary implications.

And while it is true, as we said in *In re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385, that such statutes are "remedial," they are not remedial in the sense that they are intended to furnish a remedy for some natural or inherent right, but only in the sense that the beneficiary is given a status in law that he may take advantage of existing remedies. Whereas to an illegitimate, being denied all social and civil rights at common law, the statute undertakes to give all that it can give, that is, the civil right to inherit under the laws of descent. Respondent's rights depend, then, upon the statutes of this state. If he falls within the laws of descent, he is an heir of his mother; if not, he takes no interest.

As preliminary to a discussion of the statutes, it may be admitted that respondent is an heir of his mother, Theresa Wasmund, and would be entitled to share in a distribution of her separate property. With that question we have no concern; the whole of the estate is community property. The community property system was adopted in this state in 1869.

"All property acquired after the marriage by either husband and wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property." Laws of 1869, p. 319.

The act of 1869 was rewritten and extended in 1871. Laws of 1871, p. 67. The definition of common property was retained. No rule of descent for community property was fixed by either the act of 1869 or 1871. In 1875, the legislature enacted a rule of descent for community property. It also noticed the incapacity of an illegitimate child, and fixed its status as an heir.

"Sec. 2. Upon the death of husband or wife, the whole of the community property, subject to the community debts,

shall go to the survivor, but nothing herein contained shall be construed to conflict with laws exempting property from attachment and execution, and specially the provision securing the homestead to the survivor, and all property except as an allowance for support of the family." Laws of 1875, p. 55.

"Sec. 4. Every illegitimate child shall be considered as an heir to the person who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he shall not be allowed to claim as representing his father or mother, any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father, after such marriage, shall have acknowledged him as aforesaid, and adopted him into his family, in which case such child and all the legitimate children shall be considered as brothers and sisters, and on the death of either of them intestate, and without issue, the others shall inherit his estate and he theirs as heretofore provided in like manner, as if all the children had been legitimate, saving to the father and mother respectively their rights in the estates of all the said children, as provided heretofore in like manner as if all had been legitimate." Laws of 1875, p. 55 (Rem. & Bal. Code, § 1345).

In 1879, the rule governing the descent of community property was qualified. It was provided:

"Sec. 13. In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies. If there be no issue of said deceased living or none of their representatives living, then the said community property shall all pass to the survivors, subject to the community debts, and to the exclusion of collateral heirs, the family allowance, and the charges and expenses of administration." Laws of 1879, p. 79.

See, also, Rem. & Bal. Code, § 1342.

The word "issue" had been theretofore defined in § 13 of the act of 1875 as "all lawful lineal descendants of the an-

cestor." The act of 1879 does not refer to the rights of an illegitimate child.

It was within the power of the legislature to place the whole of the community estate in the survivor, as it did in the act of 1875, or in the "legitimate issue," if any, of the deceased spouse, as it did in the act of 1879. Considering the history of the law, we have no doubt of its intention to exclude illegitimate issue. We are invited to consider the injustice of the common law rule and hold, inasmuch as an illegitimate child is always and "shall in all cases be considered as heir to the mother," that it was the intention of the legislature to raise an illegitimate to the rank of a legitimate inheritor. We may grant the injustice of the common law, but the statute is plain. We have no power to extend it beyond its terms. In the act of 1875, the rule of descent is fixed absolutely in the surviving spouse. In the act of 1879, the half of the estate is made subject to testamentary disposition; if no disposition is made by will and there be no legitimate issue, it goes to the survivor. If this were all, the contention of counsel might invite some remote doubt, but when it is remembered that in, and as a part of, the same act the legislature defined the right of an illegitimate to inherit at all in general terms, without qualifying the section referring to the descent of community property, we must assume that it had no intention to give to an illegitimate child any property other than the separate property of the parent.

While it may seem an unjust thing for the legislature to provide that an illegitimate cannot inherit the whole estate —the community property as well as the separate property—it is not entirely so, for, but for the statute, it could not inherit at all. And there are sound reasons to sustain the legislative intent as we find it to be. Our construction gives effect to every word of every act. We write nothing out of the law. Moreover, it is most likely that the legisla-

ture considered, having in mind that the community was a legal entity, the property being held by the whole as well as by the half and surviving to a spouse from the community rather than from the person of the deceased, that it would not be consistent with wise policy to distribute or destroy the entity by a grant to one who had no blood interest with the survivor; one who may be, and often is, an absolute stranger to the family, a "community" as it existed during the time the property was in process of building. It may have considered also that it was within the power of a parent to provide, under the statute of wills, for an illegitimate.

Taking the case at bar and fitting it to the entire law, we must assume that deceased was mindful of the statute and its terms. Instead of making a will, she relied upon the statute, as we must presume, which, in the absence of "legitimate issue," puts the estate in the hands of her surviving husband.

Counsel rely upon several decisions. In *In re Gorkow's Estate, supra,* the estate was the separate property of the deceased, and the heir had been acknowledged by the father. Gorkow died testate, and the questions confronting us were in no way involved. Neither does *In re Rohrer,* 22 Wash. 151, 60 Pac. 122, 50 L. R. A. 350, touch, in any way, the statutes of descent. *Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765, and *Warburton v. White,* 176 U. S. 484, are not in point. Children by a "former marriage" are legitimate issue and are clearly entitled to inherit the common property. Counsel also rely with much assurance upon cases from other states. In all of them the courts very properly followed a rule of liberal interpretation, the statutes being subject to interpretation. In the instant case, the statute being in no way doubtful, but plain and certain in its terms, we are not put to the necessity of interpretation or construction. We have only to declare the law as we find it.

Reversed and remanded with instructions to proceed with the administration of the estate without further interference on the part of the respondent.

MORRIS, C. J., MOUNT, FULLERTON, and ELLIS, JJ., concur.