[No. 20770. Department One. October 26, 1927.]

MAX WASMUND, *Appellant,* v. ALFRED WASMUND *et al.,*
*Respondents.*[1]

[1] ADOPTION (1-1)—BY CONTRACT. An oral ante-nuptial agreement
to adopt, support, bring up and treat an illegitimate son of one
of the parties with the same rights as other children, without
any adoption proceedings under the statute, is insufficient to
give such son any right of inheritance in the property of the
parties.

[2] SPECIFIC PERFORMANCE (25) — WILLS (8-1) — CONTRACTS EN-
FORCIBLE—CONTRACTS TO DEVISE. An ante-nuptial agreement to
adopt, support and bring up the wife's illegitimate son and
make him an heir to the extent of a child's interest cannot be
supported or specifically enforced on the theory that it is an
agreement to make a will in favor of such child to the extent
of his share in property descending to other children, nor as
an agreement to refrain from making a will impairing such in-
heritance right; nor would an agreement to raise and care for
such son "like their own children," amount to an enforcible
agreement to leave any property to him.

[3] SAME (25). An admission that decedent "had provided" for
plaintiff in his last will and testament and had orally agreed to
make plaintiff his heir "to the extent of a child's interest,"
does not establish a duty or enforcible contract to make a will
leaving him any particular amount of property.

[4] LIMITATION OF ACTIONS (24)—PARTICULAR ACTIONS—EQUITY—
PARTNERSHIP ACCOUNTING. An action for a partnership account-
ing is barred when not commenced for more than ten years
after termination of the partnership.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered April 29, 1927, dis-
missing an action for specific performance, upon sus-
taining a demurrer to the complaint. Affirmed.

*Ralph Woods,* for appellant.
*H. P. Jones,* for respondents.

[1] Reported in 260 Pac. 259.

PARKER, J.—The plaintiff, Max Wasmund, commenced this action in the superior court for Pierce county, seeking relief in the nature of specific performance of an alleged ante-nuptial contract entered into between his mother, Theresa Wasmund, nee Lorenz, deceased, and his stepfather, Carl Wasmund, deceased; and an alleged contract entered into between him and Carl after the death of his mother, confirming such ante-nuptial contract. The relief sought is that the defendants, Alfred Wasmund and other children and grandchildren of Carl Wasmund, heir and testamentary claimants to the property left by him, be decreed as holding title to an undivided one-fifth interest in all such property in trust for the plaintiff, by virtue of the contracts between the stepfather Carl and the mother Theresa, and between Carl and Max.

The complaint contains two separately stated causes of action, one upon each contract, though the relief prayed for is the same in each. The defendants demurred to both causes of action, which demurrers were, upon hearing and consideration by the superior court, sustained; and Max thereupon electing to stand upon the allegations of his complaint and not plead further, final judgment of dismissal was rendered against him, from which he has appealed to this court.

The facts alleged in the first cause of action may be fairly summarized as follows: The property here drawn in question is principally real property, situated in Pierce county, and it is all property acquired by Carl and Theresa Wasmund during the existence of their marriage relation, and hence was their community property at the time of the death of Theresa.

In the year 1874, Carl was a widower, living in Minnesota with his four minor children, three of whom are defendants and respondents in this action, the

other defendants and respondents being his grandchildren, the children of his deceased daughter. At that time, Theresa Lorenz, being then unmarried, was also living in Minnesota with her natural son, Max, this plaintiff and appellant, who was then about four years old. Carl and Theresa had then become acquainted and contemplated marriage with each other. The matter of the future family relation of their respective children in the contemplated new household became a matter with reference to which they desired to reach an understanding before consummating their marriage.

"The said Carl Wasmund was desirous of entering into the marriage relation with the said Theresa Lorenz. He agreed orally to marry plaintiff's mother, to take, adopt, support and treat the plaintiff at all times as his natural child, in the same manner as his own children, give him the name of Max Wasmund and make him an heir to the extent of a child's interest. In consideration thereof, plaintiff's mother orally agreed to marry the said Carl Wasmund and to help raise and support the said children of the said Carl Wasmund, to treat them in the same manner as her own child Max, to require the said plaintiff to perform such services to the said Carl Wasmund as are usually due from a child to parent. The said Carl Wasmund and plaintiff's mother were married at Winona, Minnesota, October 17, 1874, and the said plaintiff's mother thereafter strictly and literally complied with the terms of her agreement. The said Carl Wasmund and his wife, with the family, continued to reside in the state of Minnesota for seven years thereafter, when they decided to move to the state of Washington, and about the year 1882, they arrived in Pierce county, Washington. The plaintiff, as a member of the family, worked for the said Carl Wasmund, performed the usual duties owed by a child to his parent, recognized the said Carl Wasmund as his father and was compelled by the said Carl Wasmund to do the hardest kind of manual labor until he reached the age of twenty-one years."

Theresa died in April, 1912. Soon thereafter, Max made application to Carl for a share of the estate of Theresa his mother, Carl denying that he, Max, had any inheritable interest therein; this, apparently upon the theory that, while Max was an heir of Theresa his mother, he was not entitled to take any portion of the community property, he not being her legitimate child, as later held by this court to be the law in *Wasmund v. Wasmund,* 90 Wash. 274, 156 Pac. 3.

Thereafter, in 1914, in an action pending in the superior court for Pierce county, wherein there was drawn in question the claimed right of Max in the property left by his mother Theresa, in which action Max was a party by intervention, Carl, in his reply, duly sworn to, made in response to the allegations made by Max in his so-called answer in intervention, which was in effect a cross-complaint, alleged:

"That the said Max Wasmund is not the legitimate issue of the said Theresa Wasmund, deceased, and is in no way interested in or entitled to the said community estate of the said Theresa Wasmund and Carl Wasmund. . . . That, at the time of the said marriage, the said Theresa Wasmund had with her and under her care and control the said Max Wasmund, who was then about five years of age; that she had brought him with her from the city of Berlin in Germany, her native country and home; that she had never been married; . . . That they agreed by and between themselves that the said children, the said Max and Carl Wasmund's said children, all of whom are still living excepting the said Lena, should be by them raised and cared for alike, the same as if they were their own children; that the said Max should take the name of Wasmund and since then has been known by that name; said agreement, however, not being in writing. . . . That in view of the fact that the statutes of descent and distribution, of the state of Washington, provide that 'His or her half of the community property shall descend equally to the legitimate issue of

his, her or their body' and in the absence of any legitimate issue of the said spouse constituting the said community, the whole estate descends to the surviving spouse. . . . That by reason of the premises and the desire to carry out the agreement that he had with his said wife Theresa to treat all of the said children alike, and in view of his age, now being eighty odd years old, said Carl Wasmund has offered and now stands ready to give to the said Max Wasmund the sum of Eighteen Hundred Dollars ($1,800) in money, being a one-fifth part of the whole value of the said estate after the payment of debts and cost of administration. . . . The said Carl Wasmund has heretofore and at all times since the death of the said Theresa Wasmund, been ready, able and willing to do the same. The said Max Wasmund has refused to accept the same.''

Carl died in March, 1925, leaving a will by the terms of which he left to Max the sum of ten dollars only, resulting in the whole of the remainder of the property passing by testamentary disposition or inheritance to the several defendants and respondents in this case.

The facts alleged in the second cause of action may be fairly summarized as follows: The family relationship of Carl, Theresa, and their respective children, and the manner of the bringing about of that relationship, the death of Theresa and Carl, the failure of Carl to leave by the terms of his will other than the nominal sum of ten dollars to Max, are all set forth in substance as in the first cause of action, and it is further alleged:

''That after the marriage relation, the plaintiff lived in the family of Carl Wasmund and Theresa Wasmund until he reached the age of twenty-one years; that when the plaintiff reached the age of twenty-one years he planned to leave home and learn a trade; that the said Carl Wasmund persuaded the plaintiff to remain on the farm and enter into a partnership

with him and Alfred Wasmund; that for fourteen years thereafter the plaintiff remained on the farm doing the hardest kind of manual labor and the business was conducted under the name of Carl Wasmund & Sons, the said Alfred Wasmund and the plaintiff being recognized as the sons; that the plaintiff so remained on the farm without wages, clearing land, putting in crops, raising hops, milking cows and that part of the time he worked away from home turning in all of his earnings over to the said Carl Wasmund, the manager of said partnership. That the plaintiff left at the end of said fourteen year period and no settlement was made. The said Carl Wasmund representing to the plaintiff that he had been provided for in the last will and testament of the said Carl Wasmund and the said Carl Wasmund then and there orally agreed with the plaintiff that the plaintiff should be his heir to the extent of a child's interest.''

[1] Considering the first cause of action, we think it plain that the claim of Max to the property in question does not have any legal support upon the theory of his inheritance as a legal heir of Carl Wasmund. It is not claimed that Max was ever adopted by Carl as his son in pursuance of any statute of this or any other state. Such adoption can be effectually consummated only in pursuance of some statutory authority. Hence, the ante-nuptial contract relied upon can be of no legal effect in support of the claims here made in behalf of Max, if it goes no further than an attempt to make Max an heir of Carl. *In re Renton's Estate,* 10 Wash. 533, 39 Pac. 145; *Wall v. McEnnery's Estate,* 105 Wash. 445, 178 Pac. 631; *Fields v. Fields,* 137 Wash. 592, 243 Pac. 369.

[2] We do not understand counsel for Max as seriously seeking to support his claim to the property upon the theory of inheritance. We make these observations, however, to render it at once plain that the alleged ante-nuptial contract, in order to be of any avail

to Max in support of his claim, must be a contract on
the part of Carl to leave by will to Max a one-fifth of
the property possessed by Carl at the time of his death.
Does the first cause of action allege the making of any
such ante-nuptial contract by Carl and Theresa? It is
alleged therein that Carl agreed to

". . . take, adopt, support and treat the plaintiff
at all times as his natural child in the same manner as
his own children, give him the name of Max Wasmund
and to make him an heir to the extent of a child's in-
terest."

This is the whole of the alleged contract. We are
unable to see in this language any agreement on the
part of Carl to do anything more than to place Max
on an equal footing with his own children as his lawful
heir. This was not an agreement on the part of Carl
to make a will in favor of Max to the extent of one-
fifth of the property that he might leave at his death.
Nor, supposing the adoption had been legally consum-
mated, would it be an agreement by Carl to refrain
from making a will that would impair the inheritance
right of Max as an adopted son. Observations made
in our decision in *Wall v. McEnnery's Estate,* 105
Wash. 445, 178 Pac. 631, lend strong support to this
conclusion. In that decision there is cited, with ap-
proval, the decision in *Davis v. Hendricks,* 99 Mo. 478,
12 S. W. 887, wherein we read:

"The strongest case made by the evidence for the
plaintiffs is, that McCormick agreed to adopt the child
and make her his heir. Such an agreement falls far
short of the one alleged, namely, that he agreed to
grant and devise to her all of his property at his death.
The proved agreement only places the adopted child in
the position of a natural child. Its effect is no greater
than a deed of adoption under the statute; and, had
the adoption been made pursuant to the statute, Mr.
McCormick could have still disposed of his property
by will as he saw fit."

The alleged admission made by Carl, in his pleading in the later litigation, was only an admission of an ante-nuptial contract made by him with Theresa wherein it was agreed between them that Max, her child, and his children

". . . should be by them raised and cared for alike, the same as if they were their own children; that the said Max should take the name Wasmund; and since then has been known by that name."

The most that could possibly be made out of this agreement is an agreement on the part of Carl to adopt Max as his son, thereby making him an heir. Like the contract as pleaded in the preceding portions of the first cause of action, this plainly is not the setting forth of an agreement by Carl to leave any of his property by will to Max. This alleged admission of Carl seems to be pleaded with a view of overcoming the possible bar of the statute of frauds; that is, with a view of having the admission considered as a trust acknowledgment made in writing, and with proof of part performance, invoked in support of the present binding force of the ante-nuptial contract.

[3] Considering the second cause of action, there is alleged therein, as the then agreement on the part of Carl, only a declaration by Carl to Max made about the year 1905, that

". . . he [Max] had been provided for in the last will and testament of the said Carl Wasmund, and that said Carl Wasmund then and there orally agreed with the plaintiff that the plaintiff should be his heir to the extent of a child's interest."

Even should this be considered as a promise on the part of Carl to leave to Max by will some portion of the property possessed by him at the time of his death, it seems to us it did not impose upon Carl any obligation to leave any particular amount of property to

Max by will. The remainder of the alleged declaration or agreement on the part of Carl is manifestly the same in substance as the alleged agreement set forth in the first cause of action; that is, an agreement by Carl that Max should be his heir. We think the allegations of the second cause of action fall as far short of stating legal grounds for relief as did the allegations of the first cause of action.

[4] If the second cause of action should be considered as seeking a partnership accounting, manifestly any such cause for relief has long since been barred by the lapse of time, since the alleged partnership terminated in 1905.

We have not overlooked the words, "to the extent of a child's interest," found in the alleged contracts in connection with the alleged promise of Carl to make Max his heir. These quoted words, it seems to us, add nothing to the alleged promise of Carl to make Max his heir. They are but the legal effect of such a promise, and, to our minds, fall far short of a promise to leave to Max by will any specified portion of the property possessed by Carl at the time of his death.

There are decisions of the courts of this country which may not be in harmony with the conclusion we here reach, but we think our conclusion finds support in the majority, and the better reasoning, of the decisions. We are, in any event, following the strong trend of our own decisions above noticed. It is to be remembered that there is not here involved an alleged promise to will or in any manner leave to Max any specified property, the claim being that the promise was to leave to Max an undivided one-fifth interest in the property possessed by Carl at the time of his death.

Our conclusion renders it unnecessary for us to notice contentions made in briefs of counsel touching the effect of the bar of the statute of frauds, and the avoid-

ance thereof by written evidence or part performance of the alleged ante-nuptial contract.

The judgment is affirmed.

MACKINTOSH, C. J., MITCHELL, TOLMAN, and FRENCH, JJ., concur.