OLE PEDERSON and Others v. MARI HANSDATTER CHRISTOFFERSON.[1]

April 20, 1906.

Nos. 14,562—(11).

**Election of Remedies.**

> This case involves a contest as to the validity of a will. *Held*, where a party has a right to choose one of two or more appropriate, but incon-

[1]Reported in 106 N. W. 958.

sistent, remedies, and with full knowledge of all of the facts and of his rights makes deliberate choice of one of them, he is bound by his election, and is estopped from again electing and resorting to the other remedy.

## Estoppel.

The doctrine of election of remedies differs from that of estoppel in its broadest sense, in that the party invoking it need not show that he will suffer some material disadvantage, unless his adversary be required to abide by his election.

## Will—Inconsistent Positions of Proponent.

The respondent herein filed a petition in the probate court for the probate of the will. On the day appointed for the hearing the appellants appeared and moved to dismiss the petition. The motion was denied, and the hearing adjourned to enable the appellants to offer proof of the will. On the adjourned day the respondent filed objections to the allowance of the will, and the appellants appeared in support of the will. The contest was tried in the probate court without objection by any one, and resulted in an order admitting the will to probate. The respondent appealed from the order to the district court. The appellants, when the case was called for trial in the district court, moved to dismiss the appeal, because the respondent had elected to take under the will and was estopped to contest it. *Held,* that the appellants were estopped from raising the question for the first time in the district court.    .

## Acknowledgment of Natural Child.

The writing whereby the father of an illegitimate child acknowledges himself to be the father of such child, as provided by section 4473, G. S. 1894, need not be made for the express purpose of acknowledging the paternity of the child. It is sufficient compliance with the statute if the acknowledgment be made in any written instrument, collateral or otherwise, signed by the father in the presence of a competent witness, in which he clearly and specifically acknowledges that he is the father of the child. The writing here in question is sufficient to establish the heirship of the respondent.

## Evidence.

The finding of the trial court to the effect that the writing purporting to be the will of the testator was not signed by him, nor by any person in his presence by his express direction, is sustained by the evidence.    .

## Conversation Between Party and Decedent.

A party to an action or interested in the event thereof is not competent to testify to conversations with or admissions of a deceased party had with or made to a third party in his presence.

An instrument purporting to be the last will of Hans Pederson, deceased, having been admitted to probate by the probate court for Watonwan county over the objections of Mari Hansdatter Christofferson, natural daughter of the deceased, she appealed to the district court for that county. The case was tried before Lorin Cray, J., who found in favor of contestant, and directed that the order of the probate court be reversed. From an order denying a motion for a new trial, Pederson and others, the proponents of the will, appealed. Affirmed.

*J. E. Haycraft, Frank Clague,* and *Somerville & Olsen,* for appellants.

*Edward C. Farmer* and *W. S. Hammond,* for respondent.

START, C. J.

On March 18, 1904, the respondent herein, hereafter designated the contestant, filed in the probate court of the county of Watonwan, this state, her petition, wherein it was stated that Hans Pederson, who was at the time of his death a resident of the county, died on March 2, 1904, leaving an estate in the county and a last will and testament, as she was informed and believed, and that she was the daughter of the deceased and a legatee under the will. The petition also set out the name, age, and residence of the respective heirs and legatees, so far as known, with the probable value, $25,000, of the estate of the deceased, and concluded with the prayer that letters of administration of the estate with the will annexed be granted to her and a third party, naming him. The will was at this time in the possession of the probate court.

The court, on filing this petition, ordered that it be heard April 21, 1904, when all the persons interested might appear for or contest the probate of the will. On the day named for such hearing the appellants herein, hereafter designated the proponents, appeared and moved the court to dismiss the petition and vacate the order for hearing thereon, on the ground that the petition did not ask to have the will probated. The court denied the motion. On the application of the proponents, to enable them to offer proof of the will and to file objections to the granting of letters to the contestant, the hearing was then adjourned to April 29, 1904. On the day to which the hearing was

adjourned the proponents appeared in support of the will, and the contestant appeared and filed written objections to the probate thereof,. which were to the effect that the contestant was the daughter and heir at law of the deceased; that the will was not at the time of its purported execution, or at all, properly and lawfully executed as required. by law; that the deceased was not at the time of the purported execution of the will of sound and disposing mind, and had not legal capacity to make a valid will; and that its purported execution was obtained by undue influence. No objection was made by the proponents, or by any one else, to the filing of the objections by the contestant or to her appearing and contesting the will. The probate court, after a full hearing and consideration of the evidence, on May 5, 1904, determined and adjudged that the instrument in question, which was dated June 8, 1889, was the last will and testament of the deceased, and that it be admitted to probate. The court on the same day, with the consent of the proponents and the contestant, appointed E. L. Gove and D. G. D'Evelyn administrators with the will annexed. The contestant appealed from the order allowing the will to the district court of the county of Watonwan. All of the parties were represented by counsel in the proceedings in the probate court.

When the cause was called for trial in the district court, on May 23,. 1905, the proponents made a motion to dismiss the appeal on the grounds:

> First, that it appears from the records herein and by an affidavit filed that the plaintiff is in fact the proponent of the will in question, and that the appellant petitioned the probate court for the probating of the will in question, and she is therefore estopped from thereafter contesting the same.
>
> Second, on the ground that the appellant is not a party in interest, and has no interest in the estate of Hans Pederson,. deceased, except as a devisee in the will.

The motion was denied, and the proponents excepted to the ruling. The cause was then tried upon the merits by the court without a jury,. and findings of fact made to the effect following: Hans Pederson,. the alleged testator, died March 2, 1904, leaving, him surviving, a daughter, the contestant. She was the child of an unmarried woman,.

and was not born in lawful wedlock; but on February 15, 1887, by an instrument in writing, duly signed and acknowledged by her father, Hans Pederson, in the presence of competent witnesses, he acknowledged himself to be the father of the contestant. He left, him surviving, no widow, nor any other heir, except the contestant. The instrument purporting to be his will was not signed by him nor any person in his presence by his express direction, and it is not his last will and testament. As a conclusion of law the court directed judgment to be entered for the contestant, reversing the order appealed from.

Thereupon the proponents made a motion to amend the findings of fact by adding thereto the following: "That said Hans Pederson, deceased, was of full age, and of sound mind and memory, at the time said instrument in writing, bearing date June 8, 1889, and purporting to be the last will and testament of said Hans Pederson, deceased, was executed." The court made its order denying the motion.

The proponents also made a motion for a new trial, which was denied. They appealed from the order denying their motion for a new trial, and also from the order denying their motion for amended findings. This last order is not appealable. Rogers v. Hedemark, 70 Minn. 441, 73 N. W. 252. Nor is the proposed amendment material, if the evidence sustains the facts found by the trial court. The question, then, here to be considered, is whether the trial court erred in denying the proponents' motion for a new trial.

1. The first contention of the proponents to be considered is that the contestant elected to take under the will and is estopped from contesting it. Briefly stated, the claim of the proponents is that the contestant was at liberty either to institute proceedings for the probate of the will or to contest it, but she could not do both, and, having elected to institute proceedings for the probate of the will, she is estopped from changing her position. This presents the question of election of remedies, not an election under the will; for, if the will be valid, the contestant would, upon its being probated, take as legatee although she may have contested the will. In re Van Norman, 41 Minn. 494, 43 N. W. 334. The general rule as to the election of remedies is that, where a party has a right to choose one of two or more appropriate, but in-

consistent, remedies, and with full knowledge of all the facts of the case, and of his rights, makes deliberate choice of one, then he is bound by his election, and is estopped from again electing and resorting to the other remedy. The doctrine of election of remedies differs from that of estoppel in its broadest sense in that the party invoking it need not show that he will suffer some material disadvantage unless his adversary be required to abide by his election. 15 Cyc. 259–262; 7 Enc. Pl. & Pr. 366; Thomas v. Joslin, 36 'Minn. 1, 29 N. W. 344, 1 Am. St. Rep. 624; Dyckman v. Sevatson, 39 Minn. 132, 39 N. W. 73; Spurr v. Home Ins. Co., 40 Minn. 424, 42 N. W. 206; Rowell v. Smith, 123 Wis. 510, 102 N. W. 1. It does not appear from the record in this case that the contestant, when she filed her petition in the probate court, did so with full knowledge or any knowledge, actual or imputed, of the circumstances under which the supposed will was executed and of her rights in the premises. She did nothing in recognition of the will, except to file the petition. She did not then have the will in her possession, and the fair inference from the evidence is that it was never in her possession.

If the proponents had moved the probate court to strike out the contestant's objections to the probating of the will at the time she filed them, and had raised the point they first made in the district court, the probate court would have been justified in permitting her to dismiss her petition without prejudice upon a showing that her supposed election was made in excusable ignorance of facts essential to an intelligent election. They did nothing of the kind. They moved to dismiss her petition because it did not ask to have the will probated. When their motion to dismiss was denied, they asked and secured an adjournment of the hearing to enable them to offer proof of the execution of the will. On the adjourned day they assumed the position of proponents of the will, and the contestant filed her objections to the probate thereof. Thus the parties voluntarily aligned themselves, each with the implied assent of the other, and tried without objections from any one the issues tendered by the contestant. In effect the contestant abandoned her petition, and contested the will, with the implied consent of the proponents, who assumed the petition and the the burden of establishing the will. The probate court acquiesced in

such alignment of the parties, and heard and determined the issues in favor of the proponents, and the contestant appealed from its decision to the district court.

Such being the case, it is unnecessary to consider what the respective rights of the parties would have been if the proponents had seasonably asserted the claim that the contestant had elected to have the will probated and was thereafter estopped from contesting it. It must be held, and we so hold upon the plainest principles of justice, that the proponent waived the right to assert any claim in the district court that the contestant had elected to have the will probated, and for that reason her appeal should be dismissed. The proponents, by their failure to timely assert such claim, if any they had, were estopped from raising it in the district court by motion or otherwise. The case stood in the district court precisely as if the contestant had never filed the petition, for an estoppel against an estoppel sets the matter at large. Tappan v. Huntington, supra, page 31.

Counsel for proponents urge that the contestant was not put to any disadvantage by the acts of the proponents in the probate court and their failure to object to the contest of the will by her. It is said that she did not employ counsel after filing her objections, that she had the same counsel from the beginning, that the record does not show that she called any witnesses in the probate court, and, further, that she assented to the appointment of the administrators with the will annexed. If she did not employ other counsel, the fact remains that, after proponents failed to object to her contesting the will, she continued counsel in her service, and thereafter carried the burden and expenses of the contest in the probate court, and, when defeated, carried the cause by appeal to the district court. It is perfectly obvious that the contestant would have been seriously prejudiced if the proponents had been permitted to raise for the first time in the district court the point that she had no standing in court as a contestant. The fact that after the will had been allowed by the probate court, and it became necessary to appoint administrators, either general or special, to conserve the estate, she consented to the appointment of the persons to whom letters were issued, is not here material, for she did not thereby waive her right to appeal from the order allowing the will.

97 M.—32

2. The trial court received in evidence, over the objection of the proponents, a written instrument, referred to in the record as "Exhibit B." It was a lease from Hans Pederson, the alleged testator, of his farm for five years to the contestant, who is referred to therein as his daughter, and John Christofferson, whom she shortly thereafter married. Exhibit B purports on its face to have been signed by all of the parties thereto, their signatures were made with their marks, in the presence of two subscribing witnesses, and it was acknowledged on February 15, 1887, by all of the parties before a notary public. The lease contains this statement:

> The said Hans Pederson hereby acknowledges that he is the father to the said Mari Hansdatter (Ronning), the contestant.

The objection of the proponents to the admission of this exhibit in evidence was to the effect that it was incompetent and immaterial, no foundation laid for it, no evidence that the deceased knew its contents, and that it does not purport to be an instrument made for the purpose of acknowledging the contestant as the daughter of Hans Pederson. The proponents here urge that the court erred in overruling their objections.

The contestant was the illegitimate child of Hans Pederson, and Exhibit B, if otherwise admissible, was material for the purpose of showing that he had acknowledged her as his child, and that she was his heir, and entitled to appeal from the order admitting the will to probate. It is here urged that there was no evidence that the witnesses were competent. A competent witness in this connection is any person competent to testify in the matter. The evidence is ample that at least one of the subscribing witnesses was competent. The proponents further urge that Exhibit B is either not genuine, and was gotten up for the express purpose of complying with the statute, after the death of Hans Pederson, or else the clause recognizing the contestant was inserted without his knowledge or consent. The record does not disclose any evidence which would justify the conclusion that the instrument was a forgery, or that the clause acknowledging the contestant as his child was inserted without the knowledge of Hans Pederson, or that he did not know the contents of the instrument. If the original

exhibit bore any evidence of forgery or fraud, the trial court was in a position to detect it. The original is not before us.

The further objection is made that Exhibit B does not purport to be an instrument for the express purpose of acknowledging the contestant to be the child of Hans Pederson, hence it does not comply with the statute. The statute, so far as here material, is this:

> Every illegitimate child shall be considered as an heir of the person who shall in writing, signed in the presence of a competent witness, acknowledge himself to be the father of such child, * * * and shall inherit his * * * estate in whole or in part as the case may be in the same manner as if he had been born in lawful wedlock. G. S. 1894, § 4473.

This statute was not intended for the benefit or relief of fathers of illegitimate children; but it was intended for the benefit and protection of such children, and to mitigate in some measure the vicarious punishment imposed by the common law upon them for the sins of their fathers. It must, then, be liberally construed. It does not require the acknowledgment of fathership to be in any particular form, or that it should be made with any particular intent. The essential thing is the acknowledgment, the proof of which must be in writing, signed as the statute requires, which is silent as to the character or purpose of the instrument in which the acknowledgment is found. We cannot read into the statute by construction such omissions. The proof of the father's admission or acknowledgment must, however, be in writing, signed by him, in the presence of a competent witness, and it must by its terms clearly and specifically acknowledge the person therein named to be the child of the party signing the writing. This is necessary to avoid spurious claims of heirship.

The decisions of other courts construing similar statutes are conflicting as to the form and character of the instrument of acknowledgment. This is a new question in this state, and we hold, upon principle and what seems to be the weight of judicial authority, that the statute does not require that the instrument, acknowledging the paternity of the child, must be made for that express purpose and in a separate

instrument, but that it is a sufficient compliance with the statute if it be made in any written instrument, collateral or otherwise, signed by the party, in the presence of a competent witness, in which he clearly and specifically acknowledges that he is the father of the child. Blythe v. Ayres, 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40; In re Gorkow's Estate, 20 Wash. 563, 56 Pac. 385; Rohrer v. Muller, 22 Wash. 151, 60 Pac. 122, 50 L. R. A. 350; Remy v. Municipality, 11 La. An. 148; Brown v. Iowa, 107 Iowa, 439, 78 N. W. 73. Exhibit B contains a clear and specific acknowledgment by Hans Pederson that he was the father of the contestant. The trial court did not err in receiving it in evidence, and it is sufficient to sustain the finding of the court to the effect that Hans Pederson did acknowledge, in writing duly signed by him in the presence of a competent witness, that the contestant was his child.

3. The next contention of the proponents is that the evidence does not sustain the finding of the trial court that the instrument purporting to be the last will and testament of Hans Pederson was not signed by him, nor by any person in his presence by his express direction. The statute requires that every will must be in writing and signed at the end thereof by the testator, or by some person in his presence and by his express direction. G. S. 1894, § 4426. The right to dispose of one's property by will is purely a statutory right and any substantial departure in the execution of a will from the requirements of the statute renders the will void. Tobin v. Haack, 79 Minn. 101, 81 N. W. 758. Where, as in this case, the will is not personally signed by the testator by writing his name or making his mark, but his name and mark are written by another, the will is void, unless his name was so signed by his direction and in his presence. It is not, however, necessary that such direction should be given in express words. It may be by pantomime; but the acts relied upon to show such direction must be unambiguous, and clearly indicate the necessary direction or request, and the act of signing must be in obedience to the direction thus conveyed. Waite v. Frisbie, 45 Minn. 361, 47 N. W. 1069.

The name and mark of the testator in this case was signed to the will by the person who drew the will, Siver Hage, who was also one of the subscribing witnesses to the will. He was not a lawyer, but he

had had some experience in drawing legal papers, and was a friend of the testator. Halvor Erickson and Iver Paulson Bakken were the other witnesses to the will. Erickson died before the trial of the case. Bakken was not present until after the testator's name had been affixed to the will. He testified in effect that he saw no one except himself sign the will; that the testator requested him to sign it, and said that it was his will in answer to a question by Mr. Hage; and, further, that some time after this date the testator told him that he had made such papers that his heirs would not quarrel about his property after his death. Mr. Hage was the only witness who testified as to what occurred in reference to the execution of the will prior to the time Mr. Bakken came upon the scene and signed his name as a subscribing witness to the will. Testimony was given by Mr. Hage tending to show that he drew the will at the request of Mr. Erickson and as he directed; that the testator was then sick and in bed, with his eyes closed part of the time, but was not asleep; that when he (the witness) stated that the will was ready, Mr. Erickson told him to sign the testator's name to it, and he did so, that the testator said nothing to him or in his hearing about his signing the will, but Mr. Erickson talked with the testator before telling the witness to sign the testator's name to it. The hearing of the witness was not good at this time. His testimony was not wholly consistent. The fact that he signed the will as an attesting witness was a matter which affected his credibility, but to what extent was a question for the trial court, who saw and observed the witness. It is neither practicable nor necessary to here set out the evidence in full or discuss it. We have attentively considered the whole record, from which we conclude that the finding of fact of which the proponents complain is sustained by the evidence. If credence be given to the testimony of Mr. Hage, which was a question for the trial judge, it is quite clear that the will was not, within the meaning of the statute, signed by the testator, nor by any person in his presence by his express direction.

4. The proponents assign a number of alleged errors as to the rulings of the trial court in the admission of evidence. We have considered all of them that are specifically urged in the brief of counsel, and find no reversible error in any of them. It must be conceded that some

of the evidence received over the objections of the proponents was immaterial, but it is clear that it was not prejudicial to them. The sole ground upon which the trial court set aside the probate of the will was that it was not signed by the testator nor by his direction. If, as we hold, this finding is sustained by the evidence, the other alleged grounds of contest, as to which no findings were made by the trial court, became immaterial, and any error in receiving evidence to support such issues was necessarily harmless. There are, however, two alleged errors which do not refer to evidence of this character. One is to the effect that it was error to receive evidence tending to show that the contestant called the testator father and that he called her daughter. This evidence was incompetent, because the only competent proof that the testator acknowledged the contestant to be his child was a writing signed and witnessed as the statute requires; but the error was harmless, for the reason that the trial court's finding as to such acknowledgment was expressly based upon such a writing.

The other claim is that it was error for the trial court to refuse an offer to show by two of the proponents that they heard a conversation, about a year after the date of the will, between the testator and a third party, in which the testator stated the contents of the supposed will. It is far from clear that proof of this character would be admissible, even if made by competent witnesses; for, if the testator did not make a will in the manner prescribed by statute, he could not validate it by subsequently stating that he had made it and giving its contents. But, this aside, it is clear that the witnesses were not competent to testify to the alleged fact. They were parties to the contest and interested in the result of the action. Such being the case, it is clear that they could not testify to any conversation with, or admission of, the deceased testator. G. S. 1894, § 5660.

The proponents claim that their offer was not within the statute, because the conversation was with, and the admissions were made to, a disinterested third party, who could contradict the testimony of the interested party if it was untrue. But in this case the alleged third party, Mr. Erickson, was dead at the time of the trial of this case. Again, the same course of reasoning would apply to a case where the conversation was had with, or the admission made to, an interested

party in the presence of a third party. To permit the interested party to testify in such a case, because the third party could contradict him if he lied, would be a violation of both the letter and spirit of the statute. The offered evidence was in effect to prove by an interested party an admission by a deceased party. The offer was within the prohibition of the statute. Lowe v. Lowe, 83 Minn. 206–210, 86 N. W. 11; Cady v. Cady, 91 Minn. 137, 97 N. W. 580.

Order affirmed.