## SHELLY WILLIAMS v. EDWARD H. REID.[1]

July 2, 1915.

Nos. 19,343—(226).

**Acknowledging paternity of child.**

A "competent attesting witness," under the provisions of section 7240, G. S. 1913, is a competent witness who, at the request of the person making the writing containing the declaration of legitimacy, subscribes the same as such witness.

[1] Reported in 153 N. W. 324, 593.

From the final decree of the probate court for Ramsey county assigning the residue of the estate of Philip E. Reid to Josephine Reid Greene, Charles Clark Reid and Edward Reid, share and share alike, Bazille, J., Shelly Williams appealed to the district court for that county. The appeal was heard before Dickson, J., who found that Shelly Williams was the only surviving heir at law and next of kin of decedent and entitled to inherit the whole of his estate. From the order entered pursuant to the order for judgment, Edward H. Reid appealed. Affirmed.

*O'Malley & O'Malley,* for appellant.

*Frank H. Ewing,* for respondent.

SCHALLER, J.

Philip E. Reid, a resident of St. Paul, Minnesota, died intestate October 16, 1912, leaving property in Ramsey county, in this state. His estate was probated and on the twenty-fourth of April, 1914, the probate court of Ramsey county made its final decree, adjudging Edward H. Reid, the appellant herein, to be the child and one of the heirs at law of Philip E. Reid, and assigning a certain portion of the estate to him as such child and heir at law.

Shelly Williams appealed to the district court of Ramsey county and on the twenty-sixth day of February, 1915, the matter was tried to the court without a jury.

Respondent is a grand nephew of the decedent, Philip E. Reid. The only question litigated was whether or not Edward H. Reid, the illegitimate son of the decedent, had been legitimated as provided by statute.

On March 10, 1915, the district court filed its order reversing the probate court and adjudged that the respondent, Shelly Williams, was the sole surviving heir at law of Philip E. Reid. Final judgment was entered in the district court of Ramsey county, and from this judgment Edward H. Reid appeals.

The only question to be determined on this appeal is whether or not the writings introduced are sufficient to legitimate the appellant so as to make him the heir at law of Philip E. Reid, deceased.

130 M.—17.

Section 7240, G. S. 1913, reads as follows:

"An illegitimate child shall inherit from his mother the same as if born in lawful wedlock, and also from the person who, in writing and before a competent attesting witness, shall have declared himself to be his father; but such child shall not inherit from the kindred of either parent by right of representation, unless during his lifetime his parents intermarry, in which case he shall no longer be deemed illegitimate."

The writings introduced in evidence consist of two letters, the last dated in October, 1912. The letters are addressed to the appellant: "Dear Son," and concluded: "Your Dad," or "Your Father," followed by the signature of Philip E. Reid.

No person has signed either of these letters as a witness, nor do they contain any acknowledgment of paternity except the words "Dear Son," and "Your Dad" or "Your Father."

It appears that when one of these letters was written, one Hirshfield saw the deceased writing it, although he did not know the contents or any part thereof. He was not requested by deceased to sign the letter or to witness it. The other letter was written in the presence of one Banks who saw the deceased writing it and knew that the letter was being written to the appellant, but did not know the contents and was not asked to sign the letter or to witness it.

Under this state of facts, it cannot be held that the provisions of the statute are complied with. The statute seems to contemplate something more formal than the mere writing of a letter in the presence of a third party. It contemplates a written declaration by the person making it that he is the father of the illegitimate child. It provides that such declaration must be made before a "competent attesting witness." It does not seem to require that the person making the declaration should actually be the father of such illegitimate child.

There is a very interesting discussion in the briefs as to the meaning of the words "competent attesting witness." Many definitions and authorities are cited. We construe the words "attesting

witness" as used in this statute to mean a competent witness who, at the request of declarant, subscribes the instrument as such witness.

This construction is in harmony with general usage and with the language of other provisions of the statutes of this state. Section 6967, G. S. 1913, provides: "Every such mortgage, when executed in the presence of two attesting witnesses and duly acknowledged, may be filed with the clerk or recorder of the town or municipality in which the mortgagor resided." Evidently the statute in this case means that the "attesting witnesses" should subscribe their names as witnesses. It could mean nothing else.

The point is made that the revision of 1905 makes no change in the prior law; that the addition of the word "attesting" renders the statute neither more nor less definite and certain. We are cited to the report of the commissioners who prepared the revision. This report states that no change has been made in the law of descent. The legislature of 1905 enacted the revised laws of 1905. It did not enact the statements contained in the report of the commission. This court has on occasion referred to the report of the commissioners with a view to clearing up ambiguities. But the language of section 7240 is not ambiguous.

We assume that the meaning of the words "attesting witness," was well known to the members of the bar, to the court and to the laity, and that it always was construed to mean a witness who had seen the document signed and who, on request, had subscribed his name as witness to the signature and execution of the document. This definition and usage were well known to the revision committee, who were men of high standing at the bar of this state and who added the word, "attesting," to this section. Their work was revised, examined and approved by the legislature of 1905, which contained in its membership eminent lawyers from all parts of the state.

The legislature of 1905 did not use the words, "competent attesting witness," inadvisedly. The word "attesting" was not intended to be meaningless. It was apparently inserted for the pur-

pose of making definite and clear that which (as the law stood before the revision) might possibly have been open to question.

Judgment affirmed.

On July 17, 1915, the following opinion was filed:

PER CURIAM.

Undoubtedly the legislature in enacting the legitimation statute had in mind the real father of the illegitimate child, and the remark in the opinion that the statute "does not seem to require that the person making the declaration should actually be the father of such illegitimate child" was not intended as a construction of the statute.

The case of Pederson v. Christofferson, 97 Minn. 491, 106 N. W. 958, is not in point. That case arose before the revision of the statute, and the construction here given the revised statute is in harmony with the rule of liberality there laid down.

Rehearing denied.