GUSS H. HARTKOPF v. FIRST STATE BANK OF CORRELL AND OTHERS.[1]

May 25, 1934.

No. 29,842.

*Converse & Spence,* for appellant.
*Carl J. Eastvold,* for respondent.

*HILTON, Justice.*

Defendant bank appeals from a judgment against it for the return of and possession of certain personal property, or, in case such return cannot be had, then for judgment for $400, together with costs and disbursements. The case was tried to the court without a jury.

The bank was located in the village of Correll, Big Stone county, and A. J. Bandura was its cashier and managing officer. The bank had three chattel mortgages upon the live stock and machinery of one Karl H. Hartkopf, a brother of plaintiff. The mortgages were executed and were purportedly acknowledged before Bandura as a notary public at Correll on the following dates and for the respec-

[1]Reported in 256 N. W. 169.

tive amounts: December 30, 1929, $2,000; April 4, 1930, $150; July 14, 1930, $60. Each was filed in the office of the register of deeds in that county within a day or two of its execution.

On November 18, 1930, at Appleton, Karl H. Hartkopf, to secure the payment of $1,160.50, executed and delivered to plaintiff a chattel mortgage on all of the property covered by the bank's three mortgages. It was filed in the office of the register of deeds of Big Stone county the following day. It is conceded that this mortgage was a valid one, having been executed for a valid consideration and acknowledged in proper form. The court found:

"That at the time said mortgage was made and delivered plaintiff had no actual notice of the mortgages given to the First State Bank of Correll * * *. That at all times the plaintiff believed and had reason to believe that he had a first chattel mortgage lien on all of said personal property * * *."

At all the times referred to Karl H. Hartkopf resided in Big Stone county, and the mortgaged chattels were there in his possession. On or about April 10, 1931, the bank foreclosed its three mortgages and bid in the property described therein at the sheriff's sale.

The only question involved in this case is whether the bank's mortgages were entitled to filing so as to constitute constructive notice thereof to plaintiff. The determination of that question depends upon whether or not there was a notarial seal affixed to the purported certificate of acknowledgment on either instrument.

2 Mason Minn. St. 1927, § 6939, provides:

"Every notary shall provide himself with an official seal, with which he shall authenticate his official acts, and upon which shall be engraved the arms of this state, the words 'Notarial Seal,' and the name of the county in which he resides. * * *"

A notary's certificate of acknowledgment without the seal is a nullity. DeGraw v. King, 28 Minn. 118, 9 N. W. 636; Grimes v. Fall, 81 Minn. 225, 83 N. W. 835; Hodge v. Anderson, 161 Minn. 147, 201 N. W. 603. The trial court was the trier of fact as to whether or not there was a notarial seal affixed to the certificates

of acknowledgment on the chattel mortgages, each of which had been received in evidence as exhibits. The court found as to each of them:

"There is found a faint, illegible circular impression of some sort, indistinguishable and unascertainable, having no readable letters, words or figures whatsoever."

An examination of the exhibits establishes the correctness of that statement and also of the further finding, "that no notarial seal was attached to or affixed to the signature of said Bandura on said purported acknowledgment." About all that can be said of the impression is that it is circular. It is to be noted that there were three purported acknowledgments, one on each of the three chattel mortgages. They were taken on different dates, several months apart in each case. The paper of these instruments is thin, light paper such as would readily receive and retain the impression of a seal. A notary might carelessly or inadvertently fail properly to impress his seal on one instrument, but that he should so fail on three different occasions, in the circumstances here shown, is so improbable as to be wholly unreasonable. The three impressions are so practically identical as reasonably to lead to the conclusion that they were made, not by a notarial seal, but by something else to simulate such a seal. There is no statutory description relative to the size of notarial seals. Many seals other than notarial are in constant use, and these vary in size; some are of the same size as the impression here, some are larger and others smaller. In the instant case there was no evidence offered to show that the impression was even of any kind of seal. Bandura was not called as a witness.

Appellant cites Cassidy v. Souster, 115 Minn. 191, 132 N. W. 292, in which the trial court found that there was a notarial seal on an affidavit of the printer of the publication of the notice of application for judgment. The court stated [115 Minn. 193]:

"The original affidavit was produced for inspection, and appears in all things regular, and purports to have been sworn to before Herbert P. Porter, a notary public. To the left of the signature

of the notary, upon the same paper, appears a faint impression of the form of a seal, but so faint and indistinct that it cannot with positiveness be said to be the seal of a notary public. The trial judge, however, in reaching the conclusion stated, in effect found that it was the impression of a notarial seal, and we are satisfied with that finding. The document is twenty years old, and the lapse of time may to some extent have effaced the impression originally made."

In that case the trial court found that there was a notarial seal; in this case the finding was otherwise. In that case the document was an ancient one, and the suggestion is made that the lapse of time may have to some extent effaced the impression made; here the documents were fresh, clean, and apparently not changed by wear, tear, handling, or otherwise. This court cannot say that the fact found by the trial court was not a proper one.

Affirmed.

*JULIUS J. OLSON, Justice* (dissenting).

A notary public is a public officer, and, as such, speaking generally, it is his duty "to attest the genuineness of any deeds or writings in order to render them available as evidence of the facts therein contained." 20 R. C. L. p. 326, § 2, and cases under notes 4 and 7.

This court in Wood v. St. Paul City Ry. Co. 42 Minn. 411, 413, 44 N. W. 308, 7 L. R. A. 149, said:

"A notary public is considered not merely an officer of the country where he is admitted or appointed, but as a kind of international officer, whose official acts, performed in the state for which he is appointed, are recognized as authoritative the world over."

2 Mason Minn. St. 1927, § 9864, provides that every written instrument "may be acknowledged in the manner now provided by law for taking the acknowledgment of deeds, and the certificate of the proper officer indorsed thereon shall entitle such instrument to be read in evidence in all courts and elsewhere without other proof of execution." One way to test the sufficiency of these instruments is to determine whether or not, if the same were offered in evidence

in any action, they would be admissible without further proof than the certificate of acknowledgment and the seal as the same here appear.

It is true, as found by the trial court, that the impression is imperfect, and there is nothing from its appearance from which by ordinary inspection it can be said to be a *notary's* seal. But each of the mortgages bears an unmistakable impression of a seal. The notary certifies in each instance that he is a notary public. Can it then be said, in view of the fact that there is a seal, that it is not the seal of this notary? This court in Cassidy v. Souster, 115 Minn. 191, 194, 132 N. W. 292, a case similar to this except that there the instrument was 20 years old, said:

"Notaries are required to authenticate their signature by an official seal, and it is a legitimate and permissible inference that the impression made upon this affidavit was made by him in this instance for that purpose. The affidavit bears the signature of no other officer, and we would not be justified in assuming that possibly the seal was that of some official other than the notary."

It should be the business of courts to sustain, if legally possible, instruments that purport to be and in fact are securities founded upon good faith transactions. We should not by technical interpretation or by miscroscopic inspection for defects set aside the well intentioned purposes of instruments admittedly valid between the parties. For aught that appears, we may safely assume that this man took many such acknowledgments, and perhaps a vast number of the bank securities may be subject to the same attack as is here made. We all know that country bankers perform many services of this nature for their customers. Are we justified in holding with literal exactness that all notarial seals must be so firmly impressed upon documents as to leave no doubt that the impression shows the engraved "arms of this state, the words 'Notarial Seal,' and the name of the county in which he resides" before we accept the same in evidence? Is it not more consonant with reason and common practice to accept an official act at its face value until the contrary is shown? See note, L. R. A. 1916A, 1170, 1171. If we

are to scrutinize with such degree of technical refinement as plaintiff here seeks to have us do and which the majority opinion now approves, it may be that many titles and securities will be defeated. Such result should not be permitted if it is possible to sustain the validity of these instruments and the legal effectiveness of recording and filing thereof as constructive notice to subsequent encumbrancers.

Seals have an interesting historic background. They date back to the time when persons were unable to write. That is why sealed instruments were recognized by the courts in those days as of greater value and worth than instruments without such. Private seals have been done away with in most states, ours included. Official seals still have recognition, and there is no doubt that in our state under our prior holdings a notary's certificate without seal does not constitute constructive notice. But as a notary public is a public officer and as such presumed to act within his authority, it should be assumed, until the contrary is shown, that the seal appearing upon these instruments is in fact the seal of this particular notary. The trial court found that the seal appearing upon the bank's mortgages was not a notary's seal. The only basis for that finding is the evidence to be gleaned from an inspection and examination of the documents themselves. The documents are before us and have been examined. That there is an impression of a seal is beyond question, and the impression is exactly the same on each of the bank mortgages. If the presumption of performance of official duty obtains, the finding cannot be permitted to stand. The presumption that official duty has been duly performed establishes the fact that the seal is authentic—there being no evidence *contra*.

There is no claim that the notary here was removed from office or that he intentionally violated any legal requirement in taking these acknowledgments. That he acted in good faith may be presumed. No one will suspect that this notary intentionally caused these instruments to be executed in the form here appearing with the slightest suspicion that there was anything wrong with the acknowledgments or with anything else pertaining to the respective

transactions. In Evans v. Smith, 43 Minn. 59, 44 N. W. 880, a seal on the opposite side of a paper from the certificate was held sufficient. Generally speaking, a certificate of acknowledgment "is to be liberally construed and sustained if it is substantially sufficient. Resort may be had to the instrument acknowledged. Obvious clerical errors, misnomers of the instrument certified to, and all purely technical omissions and defects are to be disregarded." 1 Dunnell, Minn. Dig. (2 ed.) § 77, and cases cited.

When defendant mortgagor executed the notes and mortgages to the bank he undoubtedly intended that these instruments should be effective for the purposes thereby intended. When he executed the note and mortgage to his brother on November 18, 1930, nearly a year after having executed the $2,000 mortgage to the bank, it would seem that he owed his brother the duty of informing him that this property was encumbered by the bank mortgages. 2 Mason Minn. St. 1927, § 10395, makes it a felony for a mortgagor, "at any time before the debt secured by a chattel mortgage has been fully paid," to "sell, convey, *or in any manner dispose*" of the mortgaged property "without the written consent" of the holder of the security or "without informing the person to whom he shall *sell, convey* or *dispose* of the same that it is mortgaged."

In order for plaintiff to prove his good faith as a mortgage creditor it became necessary for him to establish that fact. He is the only witness who testified. His testimony is to the effect that in the year 1917 he worked for his brother, the defendant mortgagor, and earned $150. In 1918 he was drafted into the army. At that time he had accumulated $350 in cash. This he turned over to defendant, thereby making the total sum so intrusted $500. No note or other writing was executed; in fact nothing was done about this at all until November 18, 1930. At that time, so plaintiff claims, he received from his brother, the mortgagor, a note and chattel mortgage in the sum of $1,160.50, that sum representing the $500 "loaned" in 1917 and 1918 plus interest at eight per cent, also a $200 note that plaintiff had signed with his brother to the defendant bank. Oddly enough, the $200 note to the bank was paid the day after this mortgage to plaintiff was made, November 19, 1930, although

he had been notified several times prior thereto to come in and pay it.

The trial court found, as has been stated in the majority opinion, that plaintiff is a good faith creditor and that he took this paper without knowledge, actual or constructive, of the defendant's (the bank's) mortgages. Appellant bank generously concedes that there is evidence to sustain the trial court; hence no point is made in that behalf. So let it be. But we cannot lose sight of the fact that the result here obtained is not in conformity with what anyone would like to see happen. This unjust result is accomplished because, according to the majority opinion, a mere symbol (notarial seal) is not so clearly impressed upon the bank's mortgages as to constitute constructive notice.

In this state many officers besides notaries may take acknowledgments. 2 Mason Minn. St. 1927, § 6973. A great many such have no seals, as members of the legislature, justices of the peace, and township clerks. As a practical matter no one was or could be deceived by this purely technical defect, if such it really is. To laymen it would never occur. It is only "in the eyes of the law" that a mere molehill becomes a mountain.

I cannot go along with the court to a result which to me appears obviously wrong, and therefore I dissent.

*STONE* and *LORING, Justices* (dissenting).

We concur in the opinion of Mr. Justice Julius J. Olson.