## CHARLOTTE REILLY v. IRVING SHAPIRO.
## CLARA HINTZ, INTERVENER.[1]

February 7, 1936.

No. 30,573.

*Andrew R. Bratter, Orr, Stark, Kidder & Freeman,* and *Clark J. A. Hazelwood,* for appellant.

*William Anderson* and *Joseph F. Cowern,* for plaintiff-respondent.

JULIUS J. OLSON, JUSTICE.

Intervener appeals from a judgment. The only error assigned is that the conclusions of law are not supported by the findings of fact.

[1] Reported in 265 N. W. 284.

The facts are not in dispute and may be summarized thus: Joseph Howard Reilly was struck down by an automobile driven by defendant, Shapiro, on October 13, 1933, and received such injuries that shortly thereafter he died. Plaintiff, his surviving wife, was duly appointed administratrix of his estate, and she brought this action to recover damages under the death by wrongful act statute. 2 Mason Minn. St. 1927, § 9657. As a result of that trial she received $4,500, which is now held by the trial court for distribution in conformity with the act.

Prior thereto, in February, 1932, Reilly had been arrested at Milwaukee, Wisconsin, upon the complaint of intervener, Clara Hintz, wherein she charged him with being the father of her then unborn child. On March 9 of that year, Reilly in the meantime having been arrested, the matter came before the civil court of Milwaukee county, that being a court of record and having under Wisconsin law plenary jurisdiction of cases of this nature. He therein entered a written plea of guilty. This instrument, eliminating the venue and title, reads:

"Now comes the above named defendant in his own proper person and enters his written plea of guilty to the complaint herein, preliminary examination having been held, and right of trial by jury [waived] and consents to the entry of judgment at this time.

"Dated, Milwaukee, Wisconsin, March 9, 1932.

"Joseph H. Reilly,
"Defendant."

On July 12 intervener gave birth to a female child, the ward Karen Hintz, for whom intervener appears as guardian in the instant case. On October 11 that court adjudged Reilly to be the father of the child, and he was ordered to pay certain items of lying-in expenses of the mother and $15 per month for the child's support over a period of 16 years. The only purpose of the present proceeding is to determine the right of the child, Karen Hintz, to inherit the same share of the $4,500 fund recovered by plaintiff as she would if born in lawful wedlock.

Counsel stipulated and the court found that 2 Mason Minn. St. 1927, § 8723, applied to intervener's claim, and that the determinative question was whether the proceedings had in and by the Wisconsin court amounted to a compliance therewith. That section provides:

"An illegitimate child shall inherit from his mother the same as if born in lawful wedlock, and also from the person who, in writing and before a competent attesting witness, shall have declared himself to be his father; * * *."

Intervener's counsel have tersely stated the only issue here to be determined. They say:

"At common law an illegitimate child does not inherit from its father; only when the father has acknowledged paternity by compliance with some statutory provision is the child entitled to inherit.

"Merely the right to inherit under the laws of one state, however, has no extraterritorial operation so as to control the course of descent which property must take in another state. Pfeifer v. Wright (C. C. A.) 41 F. (2d) 464, 73 A. L. R. 932.

"The issue here, then, is whether the proceedings had in the Milwaukee court meet the requirements of the Minnesota statute."

It is conceded, as was found by the trial court, that when Reilly made his plea of guilty he did so in open court and in the presence of the prosecuting attorney, the judge of the court, the reporter, and deputy clerk, including as well Clara Hintz, present intervener. No one signed the plea of guilty as a witness, nor did Reilly request that anyone so witness the plea.

Intervener claims that her complaint charging Reilly with being the father of her then unborn child and his written plea, duly signed by him, constituted a declaration of paternity sufficient to conform with the requirements of the quoted section of our statute.

That the record of proceedings had in the Wisconsin court furnishes proof of at least as high degree as is demanded by our statutory requirements cannot be denied. Proof of parentage is estab-

lished as adequately as human means can provide such. Full faith and credit must be given to the judgment rendered by the court having the matter in hand. Its jurisdiction of the subject matter and of the parties is conceded. We must accept it at full face value.

Nor can it be denied that a child born out of wedlock is as much in need of parental aid and the natural rights that go with the relationship of parent and child as those pertaining to a child born in wedlock. Every human instinct is moved toward extending a helping hand to such child, already laboring under a handicap impossible of removal. That is why the old and harsh rules of the common law have been modified and in many instances removed by statutory enactments. Our own statute is proof that we have made some progress in that direction. However, rights of inheritance are purely statutory. We as judges cannot make law. No matter what the individual judgment of a judge may be, his desire to aid in extending human rights cannot be employed to the extent of making law. Obviously, this matter is wholly one for the legislature to regulate and define.

We are not concerned with what conditions the legislature might have prescribed. Many statutory enactments deal with situations where certain requirements must first be met before the statutory right may be asserted. We have such requirements relating to the making of wills. Tobin v. Haack, 79 Minn. 101, 81 N. W. 758, furnishes an illustration. In that case probate of the will was refused because one of the statutory conditions to give the instrument effectiveness was lacking. The particular point there involved was that the evidence showed the subscribing witnesses to the will did not see testatrix sign it, nor did they see her signature. They did not know that she had signed a will when they attached their names; neither did she say or declare that she had signed it, nor that the particular paper was her will. This court without hesitation, in view of the statutory requirement in that regard, held that the will could not be admitted. There, as here, the vital question was purely a failure to comply with a statutory requirement. In Mechling v. McAllister, 135 Minn. 357, 358, 160 N. W. 1016, L. R. A.

1917C, 504, testator by his will bequeathed the residue of his property to his wife and son in equal shares. The son Alexander died before his father, as did Alexander's only son. Testator thereupon drew a line through the words which gave the son one-half of the residue, thereby making the language read as a devise of the whole remaining estate to his wife, and wrote on the margin of the instrument in his own hand these words, "canceled June 21, 1912, because Alexander McAllister, my son, died May 13, 1912, and his only surviving son May 26, 1912." Testator left no lineal descendants. This court, after going into the authorities most thoroughly, came to the conclusion that the testator undoubtedly intended his wife to have the lapsed legacy that by the original will was to be shared with the son. But because the alteration had not been made in accordance with statutory requirements the intent of the testator could not be given force or effect.

We have statutes respecting certain requirements that must be met before instruments can be filed or recorded in the office of the register of deeds. Two subscribing witnesses are required and there must be an acknowledgment before an officer authorized to take such before the instrument can be officially filed or recorded. Absence of such prevents entry for filing or recording. Such instruments do not furnish constructive notice even if in fact filed and recorded. The case of Hartkopf v. First State Bank, 191 Minn. 595, 256 N. W. 169, furnishes an example.

Our cases upon the construction to be given this statute, § 8723, clearly indicate that two requirements must be met. The first is that the father of the illegitimate child acknowledge his parentage and that this acknowledgment be in writing; the second that his declaration be signed by him "before a competent attesting witness." In Williams v. Reid, 130 Minn. 256, 258, 153 N. W. 324, 325, 593, it was held that the statute "contemplates a written declaration by the person making it that he is the father of the illegitimate child. *It provides that such declaration must be made before a 'competent attesting witness.'* * * * *We construe the words 'attesting witness' as used in this statute to mean a competent witness who, at the request of declarant, subscribes the instrument as such witness.*"

(Italics ours.) In the case of In re Estate of Snethun, 180 Minn. 202, 230 N. W. 483, it appeared that certain proceedings were had in Norway whereby defendant was required to contribute to the support of his illegitimate child. The court found there, as here, that there was no doubt of Snethun's parentage. The court said, 180 Minn. 204:

"The decedent apparently made no attempt to 'exculpate himself' from the charge that he was the father of the child, and the evidence presented at the hearing leaves no doubt that he was in fact the father."

This court, however, held that because the documents upon which reliance was placed by the illegitimate child contained no statement by the father that he was such in fact, no acknowledgment within the statutory requirement had been made, and as such the child was not permitted to share in the natural father's estate.

In State v. Lindskog, 175 Minn. 533, 221 N. W. 911, 912, defendant was prosecuted for failing to furnish proper food, clothing, shelter, and suitable care to two children aged five and six years. The court found that the children were illegitimate; that as such the bastardy statute furnished the only basis for and limited the extent of defendant's liability. It is true that upon reargument the court left open the question of whether, if paternity had been established under the statute, the father, determined to be such, stood in a different relationship to his child than would the father of a child born in wedlock. To overcome any doubt on that question the legislature by L. 1931, c. 94, 3 Mason Minn. St. 1934 Supp. § 10135, made provision covering that question and thereby placed such father in the same position as the father of a child born in wedlock.

Our statute relating to illegitimacy proceedings against the father is "one in law for a particular purpose, viz., for the indemnity of society against the expense of the support of the child." State v. Nestaval, 72 Minn. 415, 416, 75 N. W. 725. Before such child can inherit it must be shown that the father "in writing, before a competent attesting witness, shall have declared himself to be his

father." In respect of furnishing such proof, the Wisconsin proceedings lack the essential requirement that the guilty plea, duly signed by the father, was so signed "before a competent *attesting witness.*" See 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 826, 827, and cases cited.

On the subject of "Inheritance by, from, or through illegitimate," see annotation 24 A. L. R. subd. II, p. 586. Other cases are found annotated in 64 A. L. R. p. 1124, and 73 A. L. R. p. 941.

In view of our prior decisions, we can see no escape from the result reached below.

Judgment affirmed.