**STATE of Minnesota, on Behalf of Wendy FORSLUND (Cooper), Respondent,**

v.

**Richard BRONSON, Appellant.**

No. 50789.

Supreme Court of Minnesota.

Jan. 16, 1981.

Gislason, Dosland, Hunter & Malecki and Steven C. Isaacson, New Ulm, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert Johnson, County Atty., and Robert A. Stanich, Asst. County Atty., Anoka, for respondent.

AMDAHL, Justice.

Defendant, Richard Bronson, appeals from an order of the district court granting plaintiff's Motion to Establish an Order of Support and directing defendant to make payments for the support of his minor child.[1] On August 26, 1974, when defendant and plaintiff were each 16 years of age, a child was born to plaintiff. An action to determine paternity was commenced and, upon stipulation, defendant was, on December 18, 1975, adjudged the father of the child. In its Findings of Fact, Conclusions of Law, and Order for Judgment, the court included as a conclusion of law:

3. That the defendant shall henceforth be subject to all the obligations for the care, maintenance and education of said child and all of the penalties for failure to perform the same which are or shall be imposed by law upon the father of a legitimate child of like age and capacity.

---

1. Defendant also appealed from an Order Denying Motion to Compel Discovery. At the prehearing conference in this court it was ordered "that the issues to be considered shall be limited to the constitutionality of Minnesota Statutes."

On August 6, 1979, the matter came on before the trial court on motion of plaintiff for an order directing defendant "to pay a fair and reasonable amount for the care and support of your minor child * * *." Defendant moved to dismiss the support proceedings on the ground that Minn.Stat. § 257.251 (1971) (repealed 1980) under which the action was commenced was unconstitutional. The court denied defendant's motion to dismiss and granted plaintiff's motion for determination of support and, after considering the respective financial circumstances of the parties[2], ordered that defendant make child support payments in the amount of $42.23 per week.

The issues here presented are:

1. Does Minn.Stat. § 257.251 (1971) (repealed 1980) deny fathers of illegitimate children equal protection of the laws on the basis of gender?

2. Does Minn.Stat. § 257.251 (1971) (repealed 1980) deny fathers of illegitimate children equal protection of the laws on the basis of marital status?

Minn.Stat. § 257.251 (1971) provides:[3] "The father of a child born out of wedlock is liable * * * for the * * * necessary support * * * of the child."

A gender-based classification, to survive judicial scrutiny under the equal protection clause of the fourteenth amendment, U.S.Const. amend. XIV[4], must "serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1977); *see, Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979).

Defendant argues that section 257.251 is violative of the equal protection clause for two reasons: (1) it purports to place the entire obligation for the support of illegitimate children upon the male parent and (2) the statute does not require the female parent to contribute financially to the child's support nor does it direct the court to consider the respective earning capacities of each parent in determining the amount of the child support to be paid by the father. Defendant further argues that no legitimate governmental objective is served by making the father exclusively liable for child support regardless of which parent has custody and that the statute is based upon sexist and outmoded notions of the male as the provider and of the female as the child-rearer. In support of his argument, defendant cites several United States Supreme Court decisions in which sex-based classifications were invalidated on equal protection grounds.[5]

2. Plaintiff's only income was an AFDC grant for two children. The other child was born of her marriage to a Mr. Cooper from whom she was separated during a portion of the times material here.

3. The entire statutory scheme relating to illegitimate children was revised by the 1980 Legislature to conform with the Uniform Parentage Act. Minn.Stat. § 257.251 (1971) was expressly repealed. Act of Apr. 23, 1980, ch. 589, § 38, 1980 Minn. Laws 1070, 1085. The comparable provision in the new act, Minn.Stat. § 257.66(3) (1980), requires that the duty of support "shall be determined in accordance with chapter 518." Minn.Stat. § 518.17(3) (1980) provides:
   Subd. 3. The court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support, without regard to marital misconduct, after considering all relevant factors including:
   (a) The financial resources and needs of the child;
   (b) The financial resources and needs of the custodial parent;
   (c) The standard of living the child would have enjoyed had the marriage not been dissolved;
   (d) The physical and emotional condition of the child, and his educational needs; and
   (e) The financial resources and needs of the noncustodial parent.

4. The equal protection clause provides "nor shall any state * * * deny to any person within its jurisdiction the equal protection of the laws."

5. *Caban v. Mohammed*, (New York statute permitted mother, but not father, to block adoption of illegitimate child, without regard to proof of paternity or closeness of father-child relationship); *Orr v. Orr*, (Alabama divorce statutes provided that husbands, but not wives, may be required to pay alimony); *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d

A challenge to the constitutionality of a statute meets formidable statutory construction opposition. This court, in *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 45 (Minn.1979) delineated the role of the courts in considering the constitutionality of legislative enactments:

In cases that challenge the constitutionality of a statute, the law is presumed to be constitutional. *Head v. Special School District No. 1*, 288 Minn. 496, 506, 182 N.W.2d 887, 894 (1970), certiorari denied sub nom., *Minneapolis Federation of Teachers Local 59 v. Spannaus*, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971). An act will not be found unconstitutional unless its invalidity is clear or it is shown beyond a reasonable doubt to violate the constitution. E. g., *Grobe v. Oak Center Creamery Co.*, 262 Minn. 60, 61, 113 N.W.2d 458, 459 (1962); *State v. Lanesboro Produce & Hatchery Co.*, 221 Minn. 246, 255, 21 N.W.2d 792, 796 (1946). We declare a law unconstitutional only if absolutely necessary, and then only with great caution. E. g., *City of Pipestone v. Madsen*, 287 Minn. 357, 363, 178 N.W.2d 594, 598 (1970); *Minneapolis Gas Co. v. Zimmerman*, 253 Minn. 164, 173, 91 N.W.2d 642, 650 (1958); *State v. Lanesboro Produce & Hatchery Co.*, 221 Minn. 255, 21 N.W.2d 796.

■ It is well established that if a statute is ambiguous, the construction which avoids constitutional conflict is preferred although such construction may be less natural. *Schumann v. Commissioner of Taxation*, 312 Minn. 477, 481, 253 N.W.2d 130, 132 (1977). If the act is reasonably susceptible of two different constructions, one of which would render it constitutional and the other unconstitutional, we must adopt the one making it constitutional. *In re Cold Spring Granite Co.*, 271 Minn. 460, 467, 136 N.W.2d 782, 787 (1965). Additionally,

in the interpretation of statutes, the courts are required to discover and effectuate legislative intent, to consider objects which the legislature seeks to accomplish by the statute and the mischief sought to be remedied, and to avoid the result which would be absurd or would do violence to the language of the statute. *Peterson v. Haule*, 304 Minn. 160, 170, 230 N.W.2d 51, 57 (1975); Minn.Stat. § 645.16 (1980).

■ Applying these statutory construction principles to the language of section 257.251, it must be concluded that there is nothing in the statute which requires this court to read it as imposing the duty of support exclusively upon the male parent. Rather, in light of the object to be obtained by the legislation and other legislative enactments in the area of illegitimates, the most reasonable interpretation of the statute is that it was designed not to discriminate against fathers, but to remedy the inequities of the common law by establishing that both parents, not just mothers, are legally obligated to support their illegitimate children.

Prior to the enactment of the paternity act, the sole obligation to provide for illegitimate children was that of the mother under the common law. *State ex rel. Schumacher v. Hausewedell*, 94 Minn. 177, 102 N.W. 204 (1905); *State v. Nestaval*, 72 Minn. 415, 75 N.W. 725 (1898). The father had no common law duty to support his illegitimate children. *State v. Lindskog*, 175 Minn. 533, 221 N.W. 911 (1928). The statute forms the basis for, and extent of, the father's legal obligation to provide support. *State v. Johnson*, 216 Minn. 427, 13 N.W.2d 26 (1944); *Reilly v. Shapiro*, 196 Minn. 376, 265 N.W. 284 (1936).

The plaintiff argues that the common law duty of the mother to support her illegiti-

688 (1975) (Utah statute set different age of majority for the sexes, thereby depriving females of child support three years before males); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (Idaho statute gave absolute preference to males over equally qualified females for appointment as administrators of estates); *see also Califano v. Westcott*, 443

U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979) (social security act provided for AFDC benefits to family with unemployed fathers but uniformly denied benefits in cases of unemployed mothers); *Craig v. Boren*, (Oklahoma statute prohibited sales of beer to males under age 21 and to females under age 18).

mate child was not abrogated by the passage of section 257.251 or its predecessors and that although this court has held that the paternity statute "completely supersedes the primitive common law rules with reference to illegitimate children and their fathers," *State v. Sax,* 231 Minn. 1, 6–7, 42 N.W.2d 680, 684 (1950), it has not held that the entire support obligation was thereby transferred to the male parent.

Consideration of the purpose of the paternity act supports plaintiff's argument. Minn.Stat. § 257.33 (1980)[6] imposes upon the commissioner of public welfare a duty to safeguard the interests of an illegitimate child and to secure "for him the nearest possible approximation to the care, support and education that he would be entitled to if born of a lawful marriage." It is reasonable to assume that because the mother's duty of support was already established under common law, the legislature determined it need only to focus its attention upon the father.

Defendant argues that the mother's ability to support the child should be considered in determining the extent of the father's support obligation of an illegitimate child. In response, plaintiff points out that the statute does not prohibit such a consideration and asserts that any gender-based classification is a product of case law, not the wording of section 257.251. *State v. Sax,* is illustrative of cases supporting the latter assertion. In *Sax* the court determined:

Under § 257.23, the adjudged father is subject to all the obligations for the care, maintenance, and education of the child as the father of a legitimate child. *The law is settled that the father of a legitimate child owes a primary duty to support his minor child and that the mother's obligation is secondary to his.* * * * Therefore, the mother's ability to support her child is irrelevant to the question of what the father should pay. *To the extent that the trial court takes the moth-*

*er's means into consideration in modifying the amount of the father's liability in making the support order, it is relieving the father of his primary duty, contrary to our view of the law.*

231 Minn. at 19, 42 N.W.2d at 690 (emphasis added) (citation omitted).

*Sax* was decided at a time when the primary duty of support of legitimate children was upon the father. *Haugen v. Swanson,* 222 Minn. 203, 23 N.W.2d 535 (1946). The court reasoned that the mother's obligation to support her illegitimate child, like that of a mother of a legitimate child, was secondary to the father's and that, therefore, her ability to support was irrelevant to the father's support obligation.

The foundation of the *Sax* decision was cut away by subsequent legislation regarding support obligations of parents of legitimate children. By amendments to Minn. Stat. § 518.17 in 1969 and 1971, Act of June 6, 1969, ch. 1030, 1969 Minn.Laws 2081; Act of Apr. 29, 1971, ch. 173, 1971 Minn.Laws 352, the Legislature imposed coextensive obligations on fathers and mothers of legitimate children: "In determining the amount of child support to be paid by *each parent,* the court shall consider the earning capacity and financial circumstances of *each parent.*" Minn.Stat. § 518.17(2) (1971) (emphasis added). By reason of the declaration of purpose contained in section 257.33, coextensive support obligations were necessarily incorporated into child support proceedings brought under the paternity statutes.

The 1971 Legislature demonstrated its intention to improve the status of illegitimates by expanding the right of an illegitimate to inherit, Act of Apr. 20, 1971, ch. 22, 1971 Minn.Laws 243 (current version at Minn.Stat. § 525.172 (1980)) and by providing illegitimate children with all remedies under the Uniform Reciprocal Enforcement of Support Act, Act of Apr. 22, 1971, ch. 143, § 7, 1971 Minn.Laws 272, 274 (repealed

---

**6.** The statute has been singled out by Professor Krause as the single most important Minnesota provision in the paternity field. H. Krause, *Illegitimacy: Law and Social Policy* 305 (1971).

The trial court also recognized the effect of the statute and substantially adopted the wording of the statute in the drafting of paragraph 3 of its conclusions of law, supra at 2, when paternity was adjudicated.

1980). It is unreasonable to infer that the Legislature intended, by adopting section 257.251 at the same session, to abrogate the common law support duty of a mother of an illegitimate by implied repeal. We hold that section 257.251 establishes a statutory requirement of support for illegitimate children by the father which parallels the common law requirement of support by the mother, thus making the duty of support coextensive and, in contrast to laws invalidated on equal protection grounds, does not create a gender-based classification. The statute is thus gender-neutral and constitutionally valid. To the extent that prior decisions of this court require or establish gender-based distinctions between the support responsibilities of fathers and mothers of illegitimate children, they are overruled.

■ 2. Defendant's second contention is that the paternity statutes place a greater support burden on unmarried fathers than the statutes requiring support from married fathers place upon such fathers and thus there is a denial of equal protection of the laws on the basis of marital status.

While defendant has cited no supporting authority for his contention, he argues that since Mr. Cooper, husband of plaintiff, is required to pay only $30 per week for the support of the legitimate child of the plaintiff and since defendant has been ordered to pay $42.23 per week for the support of the illegitimate child, and since both support orders were determined by the same agency, he "can only point to the dissolution of marriage statute (517.17) and assume that the application of that statute to Mr. Cooper has caused the distinction."

There is nothing in the record to demonstrate that the fact that Mr. Cooper is required to pay a lesser amount of support for the legitimate child than defendant is for his illegitimate child is the result of the application of two different statutes. The amount to be paid by plaintiff's husband for the support of their child has no relevance to the child support obligation of the defendant. While it is reasonable to conclude that the plaintiff's earning capacity and financial circumstances are the same so far as each of the two children is concerned, there is no basis for an assumption that the earning capacity and financial circumstances of Mr. Cooper and the defendant are the same.

The real basis for defendant's second contention is the same as that for his first contention, i. e., that Minn.Stat. § 257.251 (1980) imposes the whole obligation for support of an illegitimate child on the father, to the exclusion of the mother. The court has determined that the statute merely augments the common law and thus makes the support responsibility of each parent coextensive with that of the other as do the statutes requiring support for legitimate children. For this reason, defendant's second contention must also fail.

The order of the trial court is affirmed.