MARTHA K. PARR v. CANAM METALS, LIMITED, AND OTHERS.[1]

January 31, 1936.

No. 30,609.

[1]Reported in 265 N. W. 287.

*William P. Harrison,* for appellants.
*Charles E. Bowen,* for respondent.

STONE, JUSTICE.

After a verdict for plaintiff against all five defendants, only Canam Metals, Limited, and Clement K. Quinn appeal from the order denying their alternative motion for judgment notwithstanding the verdict or a new trial. There was no appearance below for Stobie-Forlong-Matthews, Inc. (hereinafter, and for brevity, mentioned as S. F. M.), a corporation under the laws of Canada. There is no appeal by it or either of the other two defendants, Clarence W. Phillips, and Harry R. Naftalin.

Plaintiff is a resident of St. Paul. Defendant Canam Metals, Limited (hereinafter referred to as Canam), is a Canadian corporation, defendant Quinn, its president. He has managed the company from his office in Duluth. Canam was organized as a speculative mining holding company late in 1928. Its authorized capital stock consisted of upwards of 1,000,000 shares without nominal or par value. The company itself has never offered or sold any of its stock to the public in Minnesota or elsewhere. All of its stock which reached the public was first sold to "Stobie-Forlong-Matthews, Limited," the original S. F. M. organization in Canada.

The S. F. M. people had been long established in the brokerage business, particularly in mining stocks, in Canada. They organized the new S. F. M. Co. (one of the defendants) in Delaware for the purpose, among others, of handling some of the Canam stock

purchased by them. Admitted to do business in Minnesota, they procured, December 6, 1928, from the securities commission "registration," under our blue sky law (1 Mason Minn. St. 1927, § 3996-5), of 300,000 shares of the 750,000 or more purchased by them. S. F. M. opened and for some time maintained stock brokerage offices in St. Paul, Minneapolis, and Duluth. Under date of April 1, 1929, they reported to the commissioner of securities that, of the 300,000 shares registered, 264,930 had been sold in Minnesota and that "no more stock of the original issue will be offered to the public under the existing agreement, as all of the rest of the stock underwritten by us has been subscribed for in Canada." Accordingly, they requested cancellation of the registration, which was canceled by order of the commissioner of securities April 3, 1929. Notice of the cancellation was not served on Canam. We assume, however, for the purposes of this case, that the cancellation was effective as to it. But see State ex rel. Canam Metals, Ltd. v. Department of Commerce, 196 Minn. 222, 264 N. W. 789.

From the St. Paul office of S. F. M. plaintiff purchased 700 shares of Canam stock November 7, and another 300 shares November 21, 1929. She sues to recover what she paid for the stock, $729.50, with interest. She charges fraudulent representations inducing her purchase and also such violation of the blue sky law as would entitle her to recover under the rule of Drees v. Minnesota Petroleum Co. 189 Minn. 608, 250 N. W. 563. Her theory is, any actual fraud aside, that because of the alleged violation of the statute the defendants are guilty of a statutory tort in the nature of conversion. On this appeal we have only to consider whether she has established a case against the appealing defendants, Canam and Quinn. Her evidence fails to connect them with the alleged fraud. As to them, the case went to the jury upon the single issue whether they, or either of them, had aided or abetted S. F. M. and its agents, defendants Phillips and Naftalin, in selling the stock to her. If those sales were wrongful and if Canam and Quinn did knowingly aid and abet therein, they are liable to plaintiff under the statute, 1 Mason Minn. St. 1927, § 3996-22, and the rule of the Drees case, 189 Minn. 608, 250 N. W. 563.

In order to make sure of the facts and not relying upon negation by mere argument, the whole record has been read here, much of it reread. We fail to find therein any evidence supporting an affirmative answer to the question whether either of the appellants did aid and abet in the sale.

■ Before going further with the facts some law must be brought into view. By § 3996-3 it is declared that the provisions of the blue sky law "shall not apply to  *  *  * any isolated sales of any securities by the issuer or owner thereof, or by a representative for the account of such issuer or owner, such sales not being made in the course of repeated and successive sales of securities of the same issue by such issuer or owner or by such representative for the account of such issuer or owner. This exception shall not be deemed to exempt a broker or a broker's agent from the requirement of obtaining a license as herein provided."

During all the determinative period S. F. M. was licensed generally as a stockbroker, 1 Mason Minn. St. 1927, §§ 3996-1, 3996-5, in Minnesota. The original 264,930 shares of the 300,000 purchased by it, legitimized in Minnesota, were not outlawed by cancellation of the registration, which had made lawful its original issue by Canam and its original sale to the public by S. F. M. Under the statute, any purchaser of such stock might lawfully either sell it or buy more through S. F. M. The stock was listed on an exchange at Toronto. That exchange, however, is not recognized by our law. As far as the record shows, all transactions in the stock conducted by S. F. M. in Minnesota were over the counter. It was simply executing, as a broker, the buy and sell orders of customers. There is no evidence that, after the registration had been canceled, they sold or offered for sale any stock not lawfully owned by someone else, either here or in Canada.

Returning to the statute, 1 Mason Minn. St. 1927, § 3996-3(1), it should be noted that, as far as evidence shows, plaintiff's purchases in November, 1929, and the sales to her by S. F. M. may well have been legitimate transactions because expressly excepted from the operation of the law. It was not violated if the two sales were isolated and not "in the course of repeated and successive sales of

securities of the same issue by such issuer or owner or by such representative for the account of such issuer or owner." In applying that statute, the distinction must always be made between the action of the corporation as original "issuer" of the stock itself and as issuer merely of succeeding stock certificates to effectuate transfers of the stock from old to new owners. Canam as "issuer" or "owner" of the stock itself had nothing to do with plaintiff's purchases. S. F. M. was not "issuer" and is not shown to have been "owner" of the stock. Its only participation was as a broker. Anyway the evidence goes no further.

■ Canam, while it seems to have gone down in the depression which started the downward course of things in 1929, was distinctly not a "wild cat" or "blue sky" venture. While distinctly speculative, it was launched with real and substantial capital and valuable properties, some of them operating. It had upwards of 2,300 shareholders. It could not do otherwise in justice to them than establish, independent of its own management, registrar and transfer agents. The main one was the Toronto office of the Montreal Trust Company. Transfer agencies were also established at Duluth and Winnipeg. As far as the record discloses, they all functioned in the ordinary manner (see 19 Fletcher, Corporations, § 8932) and without criticism. Canam had no means of knowing who were its stockholders of record at any given time without getting through its transfer agents and registrars an up-to-date stockholders' list. It did so, as occasion required, for the purpose of giving notice of stockholders' meetings and the declaration and payment of dividends. It did declare and pay one quarterly dividend.

Certainly the mere maintenance of such registrar and transfer officers cannot charge the corporation and its management, otherwise innocent, with liability simply because some illegal sales of its stock, lawfully issued and legitimately owned by stockholders, are cleared through the transfer agent and recorded by the registrar. None of the stock was issued to any of the transfer agents. They had no stock to sell. All they had, aside from the appropriate records, was a supply of stock certificates to issue in effecting transfers, to the transferees of the old certificates which were canceled.

Other phases of the record and other contentions of counsel, which are numerous, might be gone into at length, but we have already said more than enough to dispose of the case.

This seems to be a test case, and we do not order judgment *non obstante*. But a retrial of this, or any trial in the companion cases, will be futile as against Canam and Quinn unless there is shown a sale illegal under the statute, plus the "aiding and abetting" concededly necessary to liability. Here, whatever suspicion it may engender, the evidence fails to prove even an illegal sale. But, had it done so, there would still be no proof of the second element. In no case can the mere existence of the transfer agents and registrar, with nothing more, satisfy the requirement which demands of the affirmative a reasonable, evidentiary basis for every conclusion necessary to overcome the negative, which prevails in the absence of such a degree of proof.

Order reversed.

