MARGARET GUPTIL v. E. O. DAHLQUIST CONTRACTING COMPANY AND ANOTHER.[1]

April 24, 1936.

No. 30,838.

[1]Reported in 266 N. W. 748.

*Mark F. Crotty* and *Ernest F. Jacobson,* for relator.
*Gillette & Meagher,* for respondents.

JULIUS J. OLSON, JUSTICE.

This matter comes before us on *certiorari* to review an order of the industrial commission denying petitioner's child compensation.

The facts are not in dispute, respondents having rested when petitioner's case was closed, and may be summarized thus: Roy Scheid was employed by respondent contracting company as a truck driver. He received injuries in the course of his employment on June 29, 1931, and died as result thereof on July 2. He was 22 years of age.

Margaret Guptil, mother of the alleged dependent child, Elizabeth Ann, was then 20 years of age. She and Roy became acquainted in June or July, 1930. They had been "going together regularly" and planned to marry July 4, 1931, when her younger sister also planned to get married. There was to be a "double wedding."

In conformity with the custom of the Catholic church, of which they were members, banns were published three succeeding Sundays before the intended marriage was to be solemnized. A marriage license was duly procured. The double wedding could not take place owing to Roy's untimely death, but the sister Marion and her intended husband were duly married at the appointed time and place.

On March 14, 1932, about eight and one-half months after Roy's fatal accident, Margaret gave birth to the child Elizabeth Ann. The only proof respecting Roy's paternity is the following testimony of Margaret: "Q. Who was the father of that child? A. Roy Scheid."

There is no testimony or other proof that the parties had agreed upon any other marriage than the ceremonial marriage to take place on July 4. Nowhere is there even a suggestion that they had assumed a marriage relationship effective *eo instante.*

Relator strenuously urges that in view of what has been recited there is room for a finding that when the child was begotten the parties must have intended a present legal status of husband and wife; that "in their own minds" they regarded "themselves as husband and wife" and thereby "consummated that marriage relation."

Roy's paternity established, we have two issues for determination: (1) Does the evidence establish that Margaret and Roy entered into a marriage contract *in praesenti?* (2) If this be not so, may the child Elizabeth Ann lawfully claim compensation from respondents as an illegitimate child?

■ Relator's theory that a marriage *in praesenti* appears from the present record cannot be sustained. The important thing which relator had to prove "was not cohabition, but the fact of a marriage contract. Cohabitation and other relevant circumstances were competent as evidence, but the conclusion to be sustained was that the contract had been made." In re Estate of Welker, 196 Minn. 447, 449, 265 N. W. 273, 274. That is the essential thing, and as to which relator's case falls far short of meeting the requirements laid down in our decisions.

Hulett v. Carey, 66 Minn. 327, 337, 69 N. W. 31, 34, 34 L. R. A. 384, 61 A. S. R. 419, does not aid relator. The court said (66 Minn. 336, 337):

"The law views marriage as being merely a civil contract, not differing from any other contract, except that it is not revocable or dissoluble at the will of the parties. The essence of the contract of marriage is the consent of the parties, as in the case of any other contract; and, whenever there is a present, perfect consent to be husband and wife, the contract of marriage is completed. * * * The whole law on the subject is that, to render competent parties husband and wife, they must and need only agree in the present tense to be such, no time being contemplated to elapse before the assumption of the status. If cohabitation follows, it adds nothing in law, although it may be evidence of marriage. *It is mutual, present consent, lawfully expressed, which makes the marriage."* (Italics ours.)

There the contract was in writing and was immediately followed by cohabitation as a married couple. The important thing in that case was the issue of whether the alleged husband had signed the written marriage agreement.

It is important, even if it be not controlling, to note that Margaret never sought compensation as Roy's widow. She knew of his injury and death immediately after the respective events, yet never made any effort to get a widow's allowance under the act. Instead Roy's mother made such attempt (unsuccessfully because she failed to show dependency). Yet Margaret, fully cognizant thereof, made no move in her own behalf. Also of some importance is the fact that in her petition for compensation in the instant proceeding she executed the same thus: "Margaret Guptil, Mother and Natural Guardian of Elizabeth Ann Scheid, Dependent Child of Roy Scheid, Deceased, Employe." Her present claim of common-law marriage is clearly an afterthought. What this court said in State v. Lindskog, 175 Minn. 533, 535, 221 N. W. 911, 912, is applicable here:

"When the complainant and the defendant commenced their cohabitation there was no agreement in the present for marriage nor thought of a present marriage."

And so also is what the court said in United States v. Dorto (C. C. A.) 5 F. (2d) 596, 597:

"In order to constitute a marriage *per verba de praesenti*, the parties must agree to become husband and wife presently. The consent which is the foundation and essence of the contract must be mutual and given at the same time, and it must not be attended by an agreement that some intervening thing shall be done before the marriage takes effect, or that it be publicly solemnized. That is to say, it must contemplate a present assumption of the marriage status, in distinction from a mere future union."

It is unnecessary further to discuss this particular phase of the case as the Welker case, 196 Minn. 447, 265 N. W. 273, so recently decided, fully states the applicable rule, and our prior cases are there fully and adequately commented upon and discussed.

■ As the child must be held to be an illegitimate, the only remaining question is whether she is entitled to receive such benefits under the compensation act as would a child born in wedlock.

1 Mason Minn. St. 1927, § 4275, classifies dependents and fixes allowances. Section 4326(b) defines the word "child" or "children" and by its terms limits those entitled to receive such compensation. That subsection reads:

"(b) *'Child' or 'children' shall include posthumous children and all other children entitled by law to inherit as children of the deceased*, also stepchildren who were members of the family of the deceased at the time of his injury and dependent upon him for support."

Obviously the only basis upon which an award may be sustained in the instant case must be limited to the italicized language above quoted.

By 2 Mason Minn. St. 1927, § 8723, it is provided:

"An illegitimate child shall inherit from his mother the same as if born in lawful wedlock, *and also from the person who, in writing and before a competent attesting witness, shall have declared himself to be his father.*"

We had occasion to pass upon this particular section in Reilly v. Shapiro, 196 Minn. 376, 379, 265 N. W. 284, 286, and there held against the child's right of inheritance because, while there the proof of parentage was "established as adequately as human means can provide such" proof, yet the portion of the statute italicized above not having been complied with, the child could not take as an heir. The same rule must necessarily be applied here. Were we to permit compensation it is obvious that by so doing we would be entering the legislative field, which obviously is not for us to enter.

The writ is discharged and the order of the industrial commission affirmed.