JAMES THOMAS JUNG, BY DOROTHY JUNG (NOW COONEY),
HIS GUARDIAN *AD LITEM*, v. ST. PAUL FIRE DE-
PARTMENT RELIEF ASSOCIATION.[1]

March 28, 1947.

No. 34,329.

*Randall, Smith & Blomquist,* for appellant.
*Roman J. Hautzinger,* for respondent.

[1]Reported in 27 N. W. (2d) 151.

Matson, Justice.

Plaintiff, by his mother as guardian *ad litem,* appeals from a judgment entered for defendant in an action for the recovery of certain pension benefits alleged to be due him upon the death of his illegitimate father.

Plaintiff is a minor child and was born out of wedlock on December 19, 1938, to Dorothy Jung. Prior thereto, on November 1, 1938, Thomas James Kell, in writing and before a competent attesting witness, declared himself to be the father of plaintiff, who was then unborn, as part of a written stipulation for settlement entered into by the mother, the state board of control, and said Thomas J. Kell, whereby the latter agreed to pay and did pay $1,000 for and in consideration of being relieved from all further liability on account of plaintiff, pursuant to Minn. St. 1945, § 257.28.[2] This stipulation was approved by the Ramsey county district court.

Thomas J. Kell, who during his lifetime was a member of the St. Paul fire department and also an active member in good standing of defendant association, was killed in the line of duty on January 9, 1942. According to the by-laws of defendant, if an active member dies leaving a widow who was his legally married wife or leaves a *child or children,* such widow and said *child or children* shall be entitled to a pension out of the association's benefit fund. In the case of a child, such pension would amount to $11.66 per month and would continue until the age of 16 years is attained. Defendant is organized under and subject to Minn. St. 1945, § 69.48,[3] which provides:

"When * * * an active member of a relief association, dies, leaving

"(1) A widow * * *; or

"(2) A child or children * * * [such] widow and the child or children shall be entitled to a pension * * *:"

Subject to certain limitations, which are not here material, such stat-

[2]See, M. S. A. § 257.28, and cf. Mason St. 1941 Supp. § 3272(a).

[3]See, M. S. A. § 69.48, and cf. Mason St. 1940 Supp. § 3750-24.

ute further provides that the pension shall be granted "in conformity with the by-laws" of the association.

After plaintiff's application for a pension had been rejected by defendant, the present suit was instituted on his behalf by his mother as guardian *ad litem* to compel defendant to pay plaintiff the aforesaid monthly pension. The trial court found specifically that plaintiff was not a child of Thomas James Kell within the meaning of the foregoing statute and within the meaning of defendant's by-laws. The only issue we need consider is whether plaintiff, born out of wedlock and whose parentage has been acknowledged by the father in writing and before a competent witness, is a *child* of the said father within the meaning of that term as used in § 69.48 and in defendant's by-laws.

■ At common law, a child born out of wedlock is said to be *filius nullius,* the child of nobody, or *filius populi,* the child of the people. The common law is in force in this state except as it has been abrogated by statute or is not adapted to our conditions. 1 Dunnell, Dig. & Supp. § 1503, and cases cited. Most states, including Minnesota, have enacted statutes mitigating to a greater or less degree the rigors of the common law and have conferred upon illegitimates certain limited rights. See, Minn. St. 1945, §§ 525.172 and 176.01, subd. 3[4]; In re Estate of Snethun, 180 Minn. 202, 230 N. W. 483; Reilly v. Shapiro, 196 Minn. 376, 265 N. W. 284. In numerous cases, the question has arisen whether illegitimates are included within such terms as "child" or "children" as used in statutes, wills, deeds, and other instruments. By the weight of authority, when the word "child" or "children" is used in a statute it means a legitimate child or children, unless the statutory language reflects an intent to the contrary. A similar interpretation has been adopted with respect to deeds, wills, and similar instruments, unless the context requires, or the circumstances surrounding the execution import, a meaning inclusive of illegitimates.[5]

---

[4] See, M. S. A. §§ 525.172 and 176.01, subd. 3, and cf. Mason St. 1940 Supp. §§ 8992-32, 4326(b).

[5] See, State v. Lindskog, 175 Minn. 533, 221 N. W. 911, 912; State v. Mc-

■ We come to a consideration of the extent to which the harshness of the common-law rule has been mitigated in this state with respect to the rights and status of children born out of wedlock.

"While the common law is flexible and adaptive, and may be applied to new conditions, the courts cannot abrogate its established rules any more than they can abrogate a statute." 1 Dunnell, Dig. § 1504.

It is the province of the legislature, not the courts, to modify the rules of the common law. Congdon v. Congdon, 160 Minn. 343, 200 N. W. 76; 1 Dunnell, Dig. § 1503. We must therefore turn to an examination of pertinent legislative enactments to determine the degree of modification. One line of authority holds that statutes in derogation of the common law are to be strictly construed; but the more modern view is that when legislation, even though in derogation of the common law, is remedial in character, a liberal construction should be adopted. 10 C. J. S., Bastards, § 24; 7 Am. Jur., Bastards, § 151. A statute conferring upon illegitimates rights which the common law denied them is remedial. Goodell v. Yezerski, 170 Mich. 578, 136 N. W. 451, 40 L.R.A.(N.S.) 516; Burris v. Burgett, 16 Del. Ch. 10, 139 A. 454; Crawford v. Masters, 98 S. C. 458, 82 S. E. 793; Edwards v. Beard, 77 Ind. App. 478, 134 N. E. 203; Wasmund v. Wasmund, 90 Wash. 274, 156 P. 3. The remedial nature of such legislation does not, however, justify a construction which gives to the statutory language an application and meaning not intended by the legislature. Gollnik v. Mengel, 112 Minn. 349, 128 N. W. 292; Minn. St. 1945, § 645.08.[6] A legislative modification of the common law is limited in its application and by its necessary implication to the removal of the mischief against which the statute is directed. In determining the extent to which the common law has been abro-

---

Curdy, 116 Me. 359, 102 A. 72; Murrell v. Industrial Comm. 291 Ill. 334, 126 N. E. 189; Brisbin v. Huntington, 128 Iowa 166, 103 N. W. 144, 5 Ann. Cas. 931; Overseers of the Poor of Forest City v. Overseers of the Poor of Damascus, 176 Pa. 116, 34 A. 351; Jackson v. Hocke, 171 Ind. 371, 84 N. E. 830; 7 Am. Jur., Bastards, §§ 3 and 136-146; 10 C. J. S., Bastards, §§ 21, 23, 24.

[6]See, M. S. A. § 645.08, and cf. Mason St. 1941 Supp. § 10933-9.

gated, we are not at liberty, even though the purpose be worthy, to substitute the horizon of judicial imagination for that of legislative intent. See, Wasmund v. Wasmund, 90 Wash. 274, 156 P. 3.

■ Section 69.48 (quoted above), under which defendant is organized, in its use of the term "child" or "children," obviously does not by and of itself involve or effect any change in the common law so as to include illegitimates. Murrell v. Industrial Comm. 291 Ill. 334, 126 N. E. 189; see, Annotation, 30 A. L. R. 1075. Its reference to defendant's by-laws adds nothing. *This court* (following the rule of State v. McCurdy, 116 Me. 359, 102 A. 72), *in construing the meaning of the term "child" in G. S. 1923, § 10136,[7] has already determined that such term, without any qualifying language to the contrary, does not embrace illegitimate children.* State v. Lindskog, 175 Minn. 533, 221 N. W. 911, 912. Although the meaning of the term "child" has thus already been determined, plaintiff, nevertheless, contends that the legislature, by reason of having enacted certain statutes extending to illegitimates certain specific rights denied to them at common law, has in reality determined that the term "child" includes an illegitimate child. The contention seems wholly untenable. Plaintiff first refers to § 525.172, which provides:

"An illegitimate child shall inherit from his mother the same as if born in lawful wedlock, and also from the person who in writing and before a competent attesting witness shall have declared himself to be his father; but such child shall not inherit from the kindred of either parent by right of representation."

Obviously, the foregoing statute pertains to, and confers only, the right of inheritance. It is not *in pari materia* with § 69.48 so as to provide any basis whatever for construing the two statutes with reference to each other. It is also clear that the legislature did not intend thereby to abrogate the common-law rule generally, but only with respect to the right of inheritance, and then in a limited degree. No recognized rule of construction permits this court to invade the

[7]Now Minn. St. 1945, § 617.56 (see, M. S. A. § 617.56, and cf. Mason St. 1927, § 10136).

province of the legislature by a process of destroying or distorting express statutory provisions intended to limit the application of a statute. Not only must this section be confined to the field of inheritance, but also to a restricted portion of that field. This court in Reilly v. Shapiro, 196 Minn. 376, 265 N. W. 284, denied an illegitimate the right to inherit under the foregoing statute from a father who in bastardy proceedings, in open court, in the presence of the prosecuting attorney, the judge, the reporter, and the complainant, pleaded guilty in writing and thereby admitted that he was the father. Although he had been duly adjudicated to be the father, his written plea of guilty had not been signed by any witness as expressly required in the foregoing statute, and therefore this court, speaking through Mr. Justice Julius J. Olson, denied his illegitimate child the right of inheritance, and in so doing said (196 Minn. 379, 265 N. W. 286):

"Nor can it be denied that a child born out of wedlock is as much in need of parental aid and the natural rights that go with the relationship of parent and child as those pertaining to a child born in wedlock. Every human instinct is moved toward extending a helping hand to such child, already laboring under a handicap impossible of removal. That is why the old and harsh rules of the common law have been modified and in many instances removed by statutory enactments. *Our own statute is proof that we have made some progress in that direction.* However, rights of inheritance are purely statutory. We as judges cannot make law. No matter what the individual judgment of a judge may be, his desire to aid in extending human rights cannot be employed to the extent of making law. Obviously, this matter is wholly one for the legislature to regulate and define." (Italics supplied.)

We have made nothing more than "some progress" in ameliorating the harsh rule of the common law. See, In re Estate of Snethun, 180 Minn. 202, 230 N. W. 483. The cautious and specific manner in which the legislature granted to illegitimates a limited right of inheritance

indicates that it intended thereby to establish not a repeal of, but only an exception to, the general rule.

Plaintiff also cites § 176.01, subd. 3, whereby it is provided that the term "child" or "children" as used in the workmen's compensation act shall include all children who are entitled by law to inherit from the deceased. Again we have an express exception which only serves to illustrate the restricted manner in which the legislature has accorded rights to children born out of wedlock. If the legislature had intended to make anything more than exceptions to the general rule, it would have used a few simple words to accord to illegitimates all the rights enjoyed by children born of legitimate parents.

With respect to the issues herein discussed, we find it unnecessary to express any opinion as to the effect of the putative father's act in making a cash settlement pursuant to § 257.28, whereby he was relieved of all further liability for the care, maintenance, and education of his-illegitimate child.

In a society which has barbarically handicapped and burdened children of illegitimate parents for sins in the commission of which they had no part, much remains to be done to humanize existing rules of law. As a court, however, we must take legislative enactments as we find them and not invade the legislative field.

The judgment of the lower court must be and is affirmed.

Affirmed.