IN RE ESTATE OF GERHART H. KARGER.
THOMAS KOEP, GUARDIAN OF GERALD EDWARD KARGER,
A MINOR, v. CLARA KARGER AND ANOTHER.

93 N. W. (2d) 137.

November 21, 1958—No. 37,522.

*Charles A. Lund, Johanson, Winter & Lundquist,* and *Gunder Gunhus,* for appellant.

*Philip R. Monson,* for respondents.

MATSON, JUSTICE.

Appeal from a judgment construing M. S. A. 525.172 and declaring male decedent's mother to be his sole heir to the exclusion of an illegitimate son whose paternity had theretofore been adjudicated under § 257.23.

The sole issue is whether an illegitimate child may inherit from one adjudged in a paternity proceeding under § 257.23 to be his father when such judicially declared father dies without having declared in writing, before a competent attesting witness, that he is the father, as required by § 525.172, which provides:

"An illegitimate child shall inherit from his mother the same as if born in lawful wedlock, and also from the person who *in writing and before a competent attesting witness* shall have declared himself to be his father; but such child shall not inherit from the kindred of either parent by right of representation." (Italics supplied.)

The facts are undisputed. Decedent, Gerhart H. Karger, died intestate on June 6, 1957, without ever having been married. The only parent surviving him was his mother, a respondent herein. Section 525.16 (4) (c) provides that a parent may inherit only in the event that decedent leaves no surviving issue or spouse.

In 1937, appellant, Gerald Karger, was born an illegitimate son to Mary Koep. In paternity proceedings (§§ 257.18 to 257.23) decedent, after a trial by jury, was adjudged to be the father of appellant under § 257.23, which reads:

"* * * If he is found guilty, or admits the truth of the accusation, he shall be adjudged to be the father of such child and *thenceforth shall be subject to all the obligations for the care, maintenance and education* of such child, and to all the penalties for failure to perform the same, which are or shall be imposed by law upon the father of a legitimate child of like age and capacity." (Italics supplied.)

Upon decedent's death, decedent's mother and appellant each petitioned the probate court for letters of administration. The probate court granted the mother's petition, and appellant appealed to the district court, which declared the mother to be the sole heir at law of the intestate, to the exclusion of appellant, on the ground that the decedent had not, in writing and before a competent attesting witness, declared himself to be appellant's father.

Section 525.172 has been construed by this court on several previous occasions. Prior to the amendment of 1905[1] (R. L. 1905, § 3650), an illegitimate child could inherit from the father only if the latter had in writing, before a competent witness, acknowledged that he was the child's father.[2] The 1905 amendment added one significant requirement to the statute as a prerequisite to the creation of a child's right to inherit from a putative father; namely, that the competent witness to the writing must be an *attesting* witness. The words "attesting witness," as used in this statute, mean a competent witness who was present at the signing and who, at the request of the declarant, subscribed the writing as such witness.[3] Although the declaration in writing which gives an illegitimate child a right of inheritance from a putative father need not be in any particular form, it must be subscribed to by

---

[1]Prior to 1905, the statute (G. S. 1894, § 4473), in so far as here pertinent, read:

"Every illegitimate child shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, acknowledge himself to be the father of such child, and shall in all cases be considered as an heir of his mother, and shall inherit his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; * * *."

[2]See, Pederson v. Christofferson, 97 Minn. 491, 106 N. W. 958.

[3]Williams v. Reid, 130 Minn. 256, 153 N. W. 324, 593.

an attesting witness and must contain an express acknowledgment by the putative father that he is the father of the child.[4]

■ Appellant asserts that the statutory words "An illegitimate child shall inherit * * * from the person who in writing * * * shall have declared himself to be his father," although giving a right of inheritance in that specific case, do not preclude it in other situations where, as here, the identity of the father has been judicially determined under § 257.23. Had the legislature intended to preclude inheritance in all cases where the father has not expressly acknowledged paternity in writing before an attesting witness, appellant contends that it would then have expressed such intent by using the word "only" to qualify the word "inherit," as applied to a putative father. Contrary to appellant's view, it has long been the holding of this jurisdiction that the word "shall" as used in § 525.172 absolutely limits the instances in which an illegitimate child may inherit from a putative father who dies intestate. In re Estate of Snethun, *supra;* Reilly v. Shapiro, *supra.* It is also significant that other sections of our probate code employ the term "shall" in like manner.[5]

■ The Snethun and Reilly cases involve facts analogous to this appeal. In the Snethun case, a decree in proceedings in Norway had apparently declared decedent the father of appellant and adjudged him liable for part of his support.

In the Reilly case, decedent pleaded guilty in writing in Wisconsin paternity proceedings, and judgment was entered rendering him liable for lying-in expenses of the mother and $15 per month over a 16-year period for the child's support. This court, in extending full faith and credit to the Wisconsin judgment and thus accepting it at its full face value, stated (196 Minn. 378, 265 N. W. 285):

"It is conceded, as was found by the trial court, that when Reilly made his plea of guilty he did so in open court and in the presence of the prosecuting attorney, the judge of the court, the reporter, and deputy clerk, including as well Clara Hintz, present intervener. No one signed

---

[4]In re Estate of Snethun, 180 Minn. 202, 230 N. W. 483; Reilly v. Shapiro, 196 Minn. 376, 265 N. W. 284.

[5]E. g., M. S. A. 525.14, 525.145(1, 2), 525.16(3 to 6).

the plea of guilty as a witness, nor did Reilly request that anyone so witness the plea."

Upon decedent's death, the mother intervened in the wrongful-death action on behalf of her child, alleging that decedent's act of signing the written plea of guilty, in the presence of the court and its officers, constituted sufficient compliance with § 525.172.

In both the Snethun and Reilly cases, the illegitimate child sought to inherit from the father's estate and in each case there was no doubt that the decedent did father the illegitimate child. In each case, however, this court found a fatal noncompliance with § 525.172 and rendered judgment against the illegitimate child, *notwithstanding the prior adjudication of paternity*. Appellant attempts to distinguish these cases on the ground that no construction of § 257.23 was involved. In the Reilly case, however, Mr. Justice Olson very clearly pointed out the distinction between paternity actions and inheritance (196 Minn. 381, 265 N. W. 287):

"Our statute relating to illegitimacy proceedings against the father is 'one in law for a particular purpose, viz., for the indemnity of society against the expense of the support of the child.' State v. Nestaval, 72 Minn. 415, 416, 75 N. W. 725. Before such child can inherit it must be shown that the father 'in writing, before a competent attesting witness, shall have declared himself to be his father.'"

■ Aside from the fact that the Reilly case is particularly in point as determinative that an adjudication of paternity does not of itself create any right of inheritance by a child from his putative father and further that such adjudication is not the equivalent of a written declaration of paternity as prescribed in § 525.172, this appeal must, in any event, be resolved against appellant by reason of the express wording of § 257.23. Appellant alleges that an adjudication of paternity under § 257.23 subjects the father to all obligations imposed upon a father of a legitimate child and that therefore this section is inconsistent with § 525.172. He then suggests that the legislature never considered the problem involved in this case. Clearly, neither of these contentions is tenable. Section 257.23 does not make a guilty party liable to all obligations imposed upon a father of a legitimate child but only for

the obligations of "care, maintenance and education." We know of no court, and of no lexicographer, that has construed or defined the words *care, maintenance,* and *education* to include inheritance rights.

Furthermore, there is nothing to indicate that the legislature failed to foresee the problem involved in this case. The Snethun and Reilly cases both involve adjudications of paternity and both were decided more than 20 years ago. Several sessions of the legislature have since intervened and the legislature has seen fit to take no action. In view of these longstanding decisions, and in view of the unmistakable implications in our decision in Jung v. St. Paul Fire Dept. Relief Assn. 223 Minn. 402, 27 N. W. (2d) 151, it is not likely that our legislature has inadvertently failed to see a problem specifically covered by the legislature of at least two other states.[6]

Appellant cites cases in support of his argument which are clearly distinguishable. Lunceford v. Fegles Const. Co. 185 Minn. 31, 239 N. W. 673, construed an illegitimate child to be a dependent stepchild of the decedent within the meaning of the predecessor of § 176.011 for purposes of receiving workmen's compensation. The court clearly pointed out that the act's purpose was to give relief to the *dependents* of one killed in industry and stressed the fact that no statute of descent and distribution was involved. In Guptil v. Dahlquist Contracting Co. 197 Minn. 211, 266 N. W. 748, the court denied the claim of an illegitimate for workmen's compensation under § 176.011 who had not been dependent for support upon the deceased father. Some Iowa cases relied upon by appellant are not relevant here since the Iowa statute provides an illegitimate may inherit from his father when paternity has been proven during his life. See, Code of Iowa 1958, § 636.46. Appellant confuses the questions "what should be done" and "what may be done under our statute."

It is urged that since courts do not require admissions to execute or imprison a man for life, but rely upon verdicts, they are justified in relying upon a verdict in a paternity action. As long as we adhere to the concept that justice is to be administered under a rule of law, and not under a rule of men, justification for what a court may do in one

---

[6]See, Code of Iowa 1958, § 636.46; Kan. Gen. Stat. 1949, 59-501.

situation, but may not do in another, turns upon *what the law is* and not upon *what the law ought to be*. What the law ought to be is for the legislature; what the law is, rests with the courts. Referring to the Reilly case, this court in the Guptil case appropriately said (197 Minn. 215, 266 N. W. 751):

"* * * [The Reilly case] held against the child's right of inheritance because, while there the proof of parentage was 'established as adequately as human means can provide such' proof, yet the portion of the statute * * * [concerning inheritance from a father] not having been complied with, the child could not take as an heir."

In Jung v. St. Paul Fire Dept. Relief Assn. 223 Minn. 402, 408, 27 N. W. (2d) 151, 155, we said:

"In a society which has barbarically handicapped and burdened children of illegitimate parents for sins in the commission of which they had no part, much remains to be done to humanize existing rules of law. As a court, however, we must take legislative enactments as we find them and not invade the legislative field."

■ At the risk of carrying coals to Newcastle, we again point out, as we have in our prior decisions,[7] that at common law, a child born out of wedlock is said to be filius nullius, the child of nobody, or filius populi, the child of the people, and that such common-law rule is in force in this state except as it has been abrogated by legislative enactment. Minnesota, as well as most other states, has enacted statutes mitigating to a greater or less degree the rigors of the common law and has conferred upon illegitimates certain *limited* rights. In numerous cases, the question has arisen whether illegitimates are included within such terms as "child" or "children" as used in statutes, wills, deeds, and other instruments. By the weight of authority, when the word "child" or "children" is used in this statute it means a legitimate child or children, unless the statutory language reflects an intent to the contrary.[8]

---

[7]See, Jung v. St. Paul Fire Dept. Relief Assn. 223 Minn. 402, 27 N. W. (2d) 151, and decisions therein cited.

[8]See, Jung v. St. Paul Fire Dept. Relief Assn. *supra;* State v. Lindskog, 175 Minn. 533, 221 N. W. 911; State v. McCurdy, 116 Me. 359, 102 A.

Although a statute conferring upon illegitimates rights which the common law denied them is remedial, that fact does not justify a construction which gives to the statutory language an application and meaning not intended by the legislature. A legislative modification of the common law is limited in its application and by its necessary implication to the removal of the mischief against which the statute is directed. In ascertaining to what extent the legislature has conferred inheritance rights upon illegitimates, we cannot construe §§ 525.172 and 257.23 with reference to each other since these two statutory sections are wholly unrelated in basic purpose and are not in pari materia with each other. In enacting § 525.172, it is clear that the legislature did not thereby intend to abrogate the common-law rule generally but only with respect to an illegitimate's right of inheritance and then only in a limited degree.[9] In enacting § 257.23 the legislature was not at all concerned with rights of inheritance but with the limited purpose of requiring the adjudicated father to indemnify society against the expense of caring for, maintaining, and educating a child born out of wedlock.[10]

The judgment of the trial court is affirmed.

Affirmed.

---

72; Murrell v. Industrial Comm. 291 Ill. 334, 126 N. E. 189; Brisbin v. Huntington, 128 Iowa 166, 103 N. W. 144, 5 Ann. Cas. 931; Overseers v. Overseers, 176 Pa. 116, 34 A. 351; Jackson v. Hocke, 171 Ind. 371, 84 N. E. 830; 7 Am. Jur., Bastards, §§ 3 and 136 to 146; 10 C. J. S., Bastards, §§ 21, 23, 24.

[9]See, Jung v. St. Paul Fire Dept. Relief Assn. *supra.*

[10]See, Reilly v. Shapiro, *supra.*