STATE of Minnesota, Respondent,

v.

Chantel Lynn CARSON, Appellant.

A15-1678

Supreme Court of Minnesota.

Filed: October 11, 2017

Lori Swanson, Minnesota Attorney General, Saint Paul, Minnesota,

Daniel A. McIntosh, Steele County Attorney, Laura E. Isenor, Assistant Steele County Attorney, Owatonna, Minnesota, and William A. Lemons, Minnesota County Attorneys Association, Saint Paul, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijo, Saint Paul, Minnesota, for appellant.

OPINION

HUDSON, Justice.

At issue is whether the chemical 1,1-difluoroethane (DFE) is a hazardous substance under Minn. Stat. § 169A.03, subd. 9 (2016). On three occasions, appellant Chantel Lynn Carson was arrested on suspicion of driving while impaired (DWI), and an analysis of her blood showed the presence of DFE. Carson was convicted of three counts of third-degree DWI for operating a motor vehicle while under the influence of a hazardous substance. The court of appeals affirmed her convictions. We hold that DFE is not a hazardous substance under Minn. Stat. § 169A.03, subd. 9, because it is not "listed as a hazardous substance in" Minn. R. ch. 5206 (2015). We therefore reverse the decision of the court of appeals.

## FACTS

The facts are not in dispute. On November 16, 2014, officers responded to a call that a driver at a drive-thru of a restaurant appeared to be intoxicated. Officers found Carson parked at the drive-thru and passed out with a can of Dust-Off between her right arm and body.[1] Dust-Off is a refrigerant-based propellant used for cleaning electronic equipment.

One week later, officers found Carson slumped over the center console of her running car. She responded after several attempts to wake her. Carson's eyes were "watery and bloodshot," and her face was "sweaty and pale." She was "lethargic"; her "speech was slurred"; and her left hand involuntarily twitched. The police found three cans of Dust-Off in the car.

Several months later, officers received three reports over the course of 2 hours describing a slumped driver at different

---

1. The police used different terms to refer to the cans of compressed air found in Carson's car on each occasion. We refer to the cans as Dust-Off for consistency.

locations. Each report gave the same description of the car, and one report indicated that, when being driven, the car was swerving. Officers eventually spotted the car in a parking lot and found Carson slouching in the driver's seat. Carson did not initially respond to the officer knocking on the window. When she finally responded, her eyes were "bloodshot and watery." The officer found five cans of Dust-Off in the car.

On each of these three occasions, Carson was placed under arrest on suspicion of DWI. The police obtained blood samples from Carson on the first two occasions, and a urine sample on the third occasion. Subsequent analysis revealed the presence of DFE and clonazepam.

In three separate cases, respondent State of Minnesota charged Carson with two counts of third-degree DWI, Minn. Stat. §§ 169A.20, subd. 1(2)-(3), 169A.26 (2016)—one for operating a motor vehicle while under the influence of a hazardous substance and one for operating a motor vehicle while under the influence of a controlled substance. Carson filed a motion to dismiss the hazardous-substance DWI charges because she claimed, in part, that there was insufficient evidence that she was under the influence of a "hazardous substance" as defined in Minn. Stat. § 169A.03, subd. 9.

During a contested omnibus hearing, a forensic scientist testified that DFE is "a propellant commonly seen in cans ... usually found in products used to clean keyboards on computers." The scientist explained:

> [DFE] is commonly seen in a product called Dust-Off. It is commonly abused as an inhalant simply because it is easy to obtain and you don't need to be a particular age to acquire it or purchase it, and it will produce a pretty rapid high, as well.

. . . .

> The abuse comes from inhaling, whether it be through a small tube ... or ... a bag that is held over the nose and mouth of the person. . . .

. . . .

> It is flammable. . . . [T]he can is under pressure so there is a hazard . . . .

. . . .

> If it is inhaled ... it can [cause injury].

The district court found that the characteristics of DFE made it a hazardous substance under the DWI statutes and denied Carson's motion to dismiss. Carson then waived her right to a jury trial and other trial rights, and the parties agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4, on the hazardous-substance DWI counts. The State agreed to dismiss the controlled-substance DWI counts. The district court found Carson guilty of three counts of third-degree DWI.

The court of appeals affirmed Carson's convictions, holding that DFE is a hazardous substance under the DWI statutes. *State v. Carson*, 884 N.W.2d 917, 922 (Minn. App. 2016). The court of appeals reasoned that DFE is a hazardous substance under the DWI statutes because it fits the definition of a hazardous substance under Minn. R. 5206.0100, subp. 7(B). *Carson*, 884 N.W.2d at 920-21. We granted Carson's petition for review.

## ANALYSIS

At issue is whether DFE is a hazardous substance under the definition provided in Minn. Stat. § 169A.03, subd. 9. We review statutory interpretation questions de novo. *Christianson v. Henke*, 831 N.W.2d 532, 535 (Minn. 2013).

In Minnesota, it is a crime to drive, operate, or be in physical control of a

motor vehicle while "the person is knowingly under the influence of *a hazardous substance* that affects the nervous system, brain, or muscles of the person so as to substantially impair the person's ability to drive or operate the motor vehicle." Minn. Stat. § 169A.20, subd. 1(3) (emphasis added). Hazardous substance, in turn, is defined as "any chemical or chemical compound that is *listed* as a hazardous substance in rules adopted under chapter 182 (occupational safety and health)." Minn. Stat. § 169A.03, subd. 9 (emphasis added).

The Commissioner of Labor and Industry promulgated the occupational safety and health rules in Minn. R. ch. 5206 in accordance with Minn. Stat. ch. 182 (2016). *See* Minn. Stat. § 182.655. These rules define "hazardous substance" to include the following:

"Hazardous substance" means a chemical or substance, or mixture of chemicals or substances, which:

. . . .

B. is either toxic or highly toxic, an irritant, corrosive, a strong oxidizer, a strong sensitizer, combustible, either flammable or extremely flammable, dangerously reactive, pyrophoric, pressure-generating, a compressed gas, a carcinogen, a teratogen, a mutagen, a reproductive toxic agent, or that otherwise, according to generally accepted documented medical or scientific evidence, may cause substantial acute or chronic personal injury or illness during or as a direct result of any customary or reasonably foreseeable accidental or inten-

tional exposure to the chemical or substance; . . . .

Minn. R. 5206.0100, subp. 7(B).[2]

Chapter 5206 contains a specific rule on hazardous substances, which includes a "[l]ist of hazardous substances" in alphabetical order. *See* Minn. R. 5206.0400, subp. 5. Rule 5206.0400 also states: "The hazardous substance list includes the majority of hazardous substances that will be encountered in Minnesota; *it does not include all hazardous substances and will not always be current.*" *Id.*, subp. 1 (emphasis added).

To determine what it means for a chemical or chemical compound to be "*listed* as a hazardous substance in rules adopted under chapter 182," Minn. Stat. § 169A.03, subd. 9 (emphasis added), the parties point to different portions of Minn. R. ch. 5206, the rules adopted under chapter 182. Carson contends that Minn. R. 5206.0400, subp. 5, is the only list of hazardous substances in the applicable rules, and that this list does not include DFE.

The State argues that Minn. R. 5206.0400 acknowledges that the list of hazardous substances in subpart 5 of the rule is "illustrative" and "does not include all hazardous substances." As a result, the State contends that Minn. R. 5206.0100, subp. 7(B), contains "a list of characteristics which, if possessed, would make a chemical or substance or a mixture . . . a hazardous substance." According to the State, DFE meets the definition of a hazardous substance under Minn. Stat. § 169A.03, subd. 9, because it "possesses a

2. Minnesota Rule 5206.0100, subp. 7, contains two other definitions of hazardous substance, Minn. R. 5206.0100, subp. 7(A) (defining hazardous substance as a chemical, substance, or mixture that is regulated under the Code of Federal Regulations); *id.*, subp. 7(C) (defining hazardous substance as a chemical, substance, or mixture that the

Commissioner of Labor and Industry has determined "present[s] a significant risk to worker health and safety or imminent danger of death or serious physical harm to an employee as a result of foreseeable use, handling, accidental spill, exposure, or contamination"). It is undisputed that DFE does not fit under either of those definitions.

number of characteristics listed under Minn. R. 5206.0100, subp. 7(B)."

Nothing in Minn. Stat. § 169A.03, subd. 9 tells us what it means "to be listed," so we look to dictionary definitions to determine the plain meaning of words. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014). Used in the context of Minn. Stat. § 169A.03, subd. 9, to be "listed" means to be included or incorporated in a list, and a "list" is a series or number of connected names, words, or other items written or printed one after another. *E.g.*, *The American Heritage Dictionary of the English Language* 1024 (5th ed. 2011) (defining the verb "list" as "[t]o make a list of; itemized" and a "list" as a "series of names, words, or other items written, printed, or imagined one after the other"); *New Oxford American Dictionary* 1019 (3d ed. 2010) (defining the verb "list" as "to make a list of" or to "include or enter in a list" and a "list" as "a number of connected items or names written or printed consecutively, typically one below the other"); *Webster's Third New International Dictionary* 1320 (2002) (defining "listed" as "incorporated in a list" and a "list" as "a simple series of words or numerals" or an "index, catalog, checklist"). Minnesota Rule 5206.0400, subp. 5, is, without dispute, a list of hazardous substances "in rules adopted under chapter 182." Minn. Stat. § 169A.03, subd. 9.

■ The State argues that Minn. R. 5206.0100, subp. 7(B), the definitions section of Minn. R. ch. 5206, *also* contains a "list" describing the relevant characteristics of hazardous substances. We disagree. In interpreting a particular statutory provision, we read the provision "in context with other provisions of the same statute." *ILHC of Eagan, LLC v. Cty. of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005). When Minn. Stat. § 169A.03 (2016), the definitions section of the DWI statutes, adopts the definition of a term from another source, it uses the phrase "has the meaning given." *Id.*, subd. 6 (stating that a term "has the meaning given in section 152.01, subdivision 4"); *id.*, subd. 13 (stating that a term "has the meaning given in section 86B.005, subdivision 9"); *id.*, subds. 7, 10, 17, 19, 23-24, 25 (stating that various terms "ha[ve] the meaning given" in various subdivisions of "section 169.011"). By using the word "listed" instead of the phrase "has the meaning given," subdivision 9 of section 169A.03 cannot be referring to the definition of a hazardous substance found in Minn. R. 5206.0100. [3]

The State and the dissent further argue that the Legislature intended subdivision 9 of section 169A.03 to encompass not only all the hazardous substances *listed* in Minn. R. 5206.0400, subp. 5, but also any chemical that would be *defined* as a hazardous substance by Minn. R. 5206.0100, subp. 7(B). According to the dissent, the *definition* of hazardous substance in Minn. R. 5206.0100, subp. 7(B), amounts to a *list* because it "is a list of characteristics, any one of which makes a substance hazardous." A list and a definition are not the same thing. *Compare New Oxford American Dictionary* 1019 (defining a "list" as "a

**3.** The dissent alleges that our holding mistakenly relies on the phrase "has the meaning given," because "each time section 169A.03 uses the phrase 'has the meaning given,' it refers to a definition contained in a *statute*," rather than—as the case here—a definition "in *rules adopted under chapter 182*." This, however, is a distinction without a difference. The Legislature has used the phrase "has the meaning given" when it intends to adopt a definition from another source and apply it to a statute in Minn. Stat. ch. 169A. The fact that the source of the definition is a statute, and not a rule, does not matter in determining whether the Legislature intended "has the meaning given" and "listed" to have the same meaning.

number of connected items or names written or printed consecutively, typically one below the other") *with id.* at 455 (defining a "definition" as "a statement of the exact meaning of a word").

If the Legislature had wanted to criminalize the operation of a motor vehicle while knowingly under the influence of *any* substance that meets the definition of a hazardous substance for purposes of the occupational safety and health rules, it knew how to do so and could have done so explicitly by using a phrase like "has the meaning given." The statutory language plainly demonstrates that the types of hazardous substances that can give rise to a driving-while-impaired conviction are limited to those substances specifically listed in Minn. R. 5206.0400, subp. 5.

We acknowledge that based on our holding today, a driver dangerously intoxicated by DFE is not criminally liable under the plain language of the current DWI statutes. The dissent argues that the Legislature could not have intended this outcome. In other words, the dissent concludes that the Legislature could not have intended to criminalize the operation of a motor vehicle while the driver is knowingly under the influence of only those chemical compounds that are explicitly listed as hazardous substances under the occupational health and safety rules. But "[t]his public policy concern should be directed to the Legislature because we must read this state's laws as they are, not as some argue they should be." *Axelberg v. Comm'r of Pub. Safety*, 848 N.W.2d 206, 212 (Minn. 2014) (citing *In re Estate of Karger*, 253 Minn. 542, 93 N.W.2d 137, 142 (1958) ("What the law ought to be is for the

[L]egislature.")), *superseded by statute*, Minn. Stat. 169A.53, subd. 3(b)(11) (2016).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand the case to the district court for further proceedings consistent with this opinion.

Reversed.

Dissenting, McKeig, J.

## DISSENT

McKEIG, Justice (dissenting).

Three times in 3 months, police found respondent Chantel Lynn Carson passed out in her car. Each time, testing revealed that Carson had been driving after using cans of Dust-Off to ingest the chemical 1,1-difluoroethane (DFE).[1] The majority, adopting a narrow reading of Minn. Stat. § 169A.03, subd. 9 (2016), concludes that Carson broke no law. Because the definition of "hazardous substance" promulgated by the Commissioner of Labor and Industry encompasses DFE, I would affirm. Accordingly, I respectfully dissent.

It is illegal to drive a car while knowingly under the influence of a hazardous substance that substantially impairs one's ability to drive. Minn. Stat. § 169A.20, subd. 1(3) (2016). A hazardous substance is "any chemical or chemical compound that is *listed* as a hazardous substance in rules adopted under chapter 182 (occupational safety and health)." Minn. Stat. § 169A.03, subd. 9 (emphasis added).

Two rules promulgated by the Commissioner of Labor and Industry are relevant to determining whether DFE is "listed as

---

1. Dust-Off is a refrigerant-based propellant made for cleaning electronic equipment. A forensic scientist testified in Carson's case that the chemical "is commonly abused as an inhalant simply because it is easy to obtain and you don't need to be a particular age to acquire it or purchase it, and it will produce a pretty rapid high, as well."

a hazardous substance." *Id.* First, Minn. R. 5206.0100, subpart 7(B), states:

"Hazardous substance" means a chemical or substance, or mixture of chemicals or substances, which:

. . . .

B. is either toxic or highly toxic, an irritant, corrosive, a strong oxidizer, a strong sensitizer, combustible, either flammable or extremely flammable, dangerously reactive, pyrophoric, pressure-generating, a compressed gas, a carcinogen, a teratogen, a mutagen, a reproductive toxic agent, or that otherwise, according to generally accepted documented medical or scientific evidence, may cause substantial acute or chronic personal injury or illness during or as a direct result of any customary or reasonably foreseeable accidental or intentional exposure to the chemical or substance; . . . .

Second, Minn. R. 5206.0400, subp. 5, lists hundreds of chemicals that are hazardous substances. DFE does not appear on this list. Rule 5206.0400 further states, "[t]he hazardous substance list includes the majority of hazardous substances that will be encountered in Minnesota; it does not include all hazardous substances and will not always be current." *Id.*, subp. 1.

DFE "is listed as a hazardous substance," Minn. Stat. § 169A.03, subd. 9, under Minn. R. 5206.0100, subp. 7(B). I agree with the court that to be "listed" means to be included or incorporated in a list, and a "list" is a series or number of connected names, words, or other items written or printed one after another. *See, e.g., The American Heritage Dictionary of the English Language* 1024 (5th ed. 2011)

(defining the verb "list" as "[t]o make a list of; itemize," and defining the noun "list" as a "series of names, words, or other items written, printed, or imagined one after the other"). Minnesota Rule 5206.0100, subpart 7(B), is a list of characteristics, any one of which makes a substance hazardous. DFE has several of those characteristics.[2] Thus, DFE is "listed as a hazardous substance," Minn. Stat. § 169A.03, subd. 9, and the district court correctly held that Carson operated a motor vehicle under the influence of a hazardous substance, in violation of Minn. Stat. § 169A.20, subd. 1(3).

The court disagrees, concluding that when section 169A.03 adopts the definition of a term from another source, it uses the phrase "has the meaning given," rather than the word "listed." Thus, the court reasons, Minn. Stat. § 169A.03, subd. 9, cannot refer to the definition of "hazardous substance" in Minn. R. 5206.0100, subpart 7(B), because it uses the word "listed" rather than the phrase "has the meaning given." But each time section 169A.03 uses the phrase "has the meaning given," it refers to a definition contained in a *statute*. By contrast, subdivision 9 of section 169A.03 defines "hazardous substance" as "any chemical or chemical compound that is listed as a hazardous substance in *rules adopted under chapter 182*." (Emphasis added).

The court's heavy reliance on the phrase "has the meaning given" is misplaced. I agree that the Legislature meant for its definition of "hazardous substance" to include, at least, the specific hazardous substances listed in Minn. R. 5206.0400, subp. 5. Subpart 5 of Rule 5206.0400 is an enumerated list; it would be strange to refer

---

**2.** The forensic scientist testified that DFE is "flammable," can cause injury if inhaled, and that "the can is under pressure so there is a hazard." The Dust-Off can contains warnings consistent with this testimony. In other words, DFE, at a minimum, is "toxic," "combustible," "flammable," "a compressed gas," and "may cause substantial . . . injury or illness." Minn. R. 5206.0100, subp. 7(B).

to it any other way. This structure explains the use of "listed" in Minn. Stat. § 169A.03, subd. 9. The court's error is in assuming that this word choice automatically closes the door to other "listed" chemicals, such as those covered by the definition of "hazardous substance" in Minn. R. 5206.0100, subpart 7(B). This assumption, based on a phrase used exclusively to refer to statutory definitions ("has the meaning given"), is questionable. It makes more sense to read Minn. Stat. § 169A.03, subd. 9, as referring to the enumerated list *as well as* any other chemicals encompassed by the list of hazardous characteristics in Minn. R. 5206.0100, subp. 7(B).

My interpretation also accords with other parts of the hazardous-substances rules. We interpret rules as a whole, viewing their words and sentences in context. *Troyer v. Vertlu Mgmt. Co.*, 806 N.W.2d 17, 24 (Minn. 2011). When possible, we interpret rules such that "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Id.* (quoting *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 861 (Minn. 2010)); *id.* at 24 n.9 (analogizing the interpretation of rules to the interpretation of statutes). Before Minn. R. 5206.0400 names specific chemicals as hazardous substances, it explains, "[t]he hazardous substance list includes the majority of hazardous substances that will be encountered in Minnesota; it does not include all hazardous substances and will not always be current." Minn. R. 5206.0400, subp. 1. This explanation makes perfect sense: subpart 5 of that rule enumerates certain hazardous substances, while Minn. R. 5206.0100, subp. 7(B), lists characteristics that make non-listed chemicals hazardous. The list of specific hazardous substances is updated at least every 2 years, Minn. R. 5206.0400, subp. 3, and in the meantime, unlisted hazardous substances are covered by Minn. R. 5206.0100, subp. 7(B).

Under the court's interpretation of the statute, Minnesotans may inhale Dust-Off and then drive at their pleasure while endangering their fellow citizens. This impunity cannot be what the Legislature intended. Because DFE is "listed as a hazardous substance in rules adopted under chapter 182," Minn. Stat. § 169A.03, subd. 9, I respectfully dissent.